Pearl **FRANKLIN**, Plaintiff,

v.

**UNITED STATES** of America, Defendant and Third-Party Plaintiff, Celia Rivlin and Daniel Rivlin, Third-Party Defendants.

Stella **SCHWARTZ**, Plaintiff,

v.

**UNITED STATES** of America, Defendant and Third-Party Plaintiff, Celia Rivlin and Daniel Rivlin, Third-Party Defendants.

Civ. A. Nos. 605, 606.

United States District Court

N. D. West Virginia.

Oct. 8, 1954.

---

9. See Note 144 A.L.R. 209 (1943).

954

Charles L. Ihlenfeld, Wheeling, W. Va., for Pearl Franklin.

Carl G. Bachmann and Gilbert S. Bachmann, Wheeling, W. Va., for Stella Schwartz.

R. J. Schleuss and Roderick A. Devison, Asst. U. S. Attys., Fairmont, W. Va., for the United States.

Russell B. Goodwin, Wheeling, W. Va., for Celia Rivlin and Daniel Rivlin.

WILKIN, District Judge (By Designation).

This is an action for damages resulting from a collision between a military truck of the United States Army and an automobile owned by the Rivlins and operated at the time of the accident by Mrs. Rivlin. The plaintiffs, Mrs. Franklin and Mrs. Schwartz, were passengers in the Rivlin car. The defendant was sued separately by each plaintiff, by virtue of Section 1346(b), Title 28 U.S.C.A., but the cases were combined for trial. The defendant interpleaded the Rivlins, alleging that the accident was caused by the sole or contributory negligence of Mrs. Rivlin. The defendant also set up the defense of contributory negligence against the plaintiffs.

In their answer, the Rivlins denied negligence and alleged that the action against them was barred by the Statute of Limitations, West Virginia Code, Chapter 55, Article 2, Section 12. Before trial the Rivlins moved for a dis-

missal of the action against them; and the Court, after argument of the motion, ordered a separation of issues and reserved ruling on the motion until after trial of the issues between the plaintiffs and the defendant United States.[1]

**1.** Memorandum opinion and order on motion to dismiss:

This case came on for hearing on the plea of the Statute of Limitations set forth in the answer of the third-party defendants, Rivlin, and was argued by counsel. It was contended by counsel for the Rivlins that the plaintiffs, Franklin and Schwartz, were barred by the Statute of Limitations of West Virginia, Chapter 55, Article 2, Section 12, from asserting or prosecuting any claim for personal injury against the third-party defendants, and further it was asserted that this Court had no jurisdiction of a claim for damages by the plaintiffs against the third-party defendants because both plaintiffs and third-party defendants were residents of West Virginia. It was also stated that the third-party defendants had made demand for jury trial, and that the issues between the plaintiffs and the defendant, the United States, would have to be determined by the Court without a jury.

Counsel for the United States asserted that the damages which the plaintiffs had suffered were caused by either the sole negligence of the third-party defendants or by the joint negligence of the defendant and the third-party defendants. They further asserted that in the latter case the United States would be entitled to contribution from the third-party defendants, that the Statute of Limitations was ineffective against the government of the United States, and that, therefore, the defendant was justified in demanding that the third-party defendants be held for trial with it, so that the rights and interests of all parties involved in the collision complained of could be determined in one action.

After due consideration of the arguments and the authorities, it seems to this Court at this time that the plaintiffs are barred from prosecuting any action against the third-party defendants, and further the plaintiffs have declined and rejected the request of the defendant, the United States, that they amend their complaints to include as party defendants the third-party defendants, Rivlin. While it is generally true that the Statute of Limitations does not run against the Government, that rule does not affect the application of the Statute to any claim of the plaintiffs against the third-party defendants. The claim which the United States is asserting, by its pleading against the third-party defendants, is essentially a claim for contribution from a joint tort feasor. Under the law of West Virginia, Chapter 55, Article 7, Section 13, West Virginia Code of 1949, Sec. 5482, as stated by the Fourth Circuit Court of Appeals:

"Contribution may be had among joint tort feasors, not with respect to an inchoate liability, but only as to a joint judgment which has already been obtained against them." Baltimore & Ohio Railroad Co. v. Saunders, 159 F.2d 481, 484(5).

This Court recognizes that in other cases where the facts and circumstances were not the same as in this case, joinder of third parties with the United States has been permitted, and the fact that the claim against the Government requires a non-jury trial, while the third-party defendants are entitled to a jury trial, has not been considered an insurmountable difficulty in procedure. Englehardt v. United States, D.C., 69 F.Supp. 451.

But because of the conditions obtaining in this case, and the formidable objections interposed by the third-party defendants, this Court has determined that it would be best to order a separation of issues and a trial, first, of the issues between the plaintiffs Franklin and Schwartz on one side, and the United States on the other side, and a postponement of determination of all issues between the defendant, the United States, and the third-party defendants until after the trial between plaintiffs and the original defendant. The case, so separated as to issues, will stand for trial on Tuesday, October 5. After judgment by the Court on the issues raised between the plaintiffs and the original defendant, the United States, with the evidence before it as to the conditions and circumstances at the time of the collision complained of, the Court will then make such order concerning the disposition of the remaining issues as appears at that time to be proper.

The Supreme Court has recognized that if, in a case of this kind, special circumstances demonstrate the advisability of doing so, the Court may order a separation of claims and their separate trial. United States v. Yellow Cab Co., 340 U.S. 543, 556, 71 S.Ct. 399, 95 L.Ed. 523.

Separation of claims and separate trials ordered.

On December 11, 1951, a military force of the United States of America was being moved from Fort Knox to Fort Mead, and it passed through Wheeling, West Virginia, about 2 or 3 o'clock, p.m., over Route 40. It consisted of five units or divisions, each unit containing about twenty or thirty trucks or other motor vehicles. The units moved separately at intervals of about five minutes. The truck that collided with the Rivlin automobile was about third from last in the third unit. And the place of the accident was the intersection of Route 40 and Locust Avenue.

Before the military force (battalion) entered the City of Wheeling, an officer in charge communicated with the police department of the City and requested police escort to convoy the battalion through the City. The officer on duty at police headquarters, Lt. John P. Murphy, responded favorably and detailed two police motorcycles to meet the battalion at the bridge over the Ohio River. Such police cars conducted the military force, unit by unit, through the "downtown" or business section of the City to the top of Wheeling Hill. Such motorcycles would then return to the bridge to escort the next or following unit. The military units proceeded on Route 40 without police escort to the eastern boundary of the City, a distance of four or five miles, the highway passing through a congested area and, at places, busy shopping centers.

The intersection of Locust Avenue and Route 40 is about two miles from Wheeling Hill. The evidence is clear and uncontroverted that there was no police escort with the third unit at the place of the accident. Two policemen came to the scene of the accident in a cruiser car a few moments after the collision, but they testified that they had had no information regarding the military movement until after the accident had occurred. The soldiers in charge of the Army truck testified that there was no police escort. There was no policeman or military officer at the intersection for the purpose of directing traffic. There was an overhead traffic light at the center of the intersection.

The occupants of the two vehicles testified that the approaching vehicle was not seen until just before the collision. The testimony was clear and uncontroverted that the traffic signal was displaying a green light to the civilian car approaching from Locust Avenue, and was displaying a red light to the Army truck approaching on Route 40. The driver of the truck admitted on cross-examination that the light was red when he moved into the intersection. The front end of the truck struck the civilian car at the rear door and fender on the left side. The truck was traveling at a speed of twenty or twenty-five miles an hour just before the collision.

The driver of the truck testified that the brakes on his vehicle had to be repaired earlier that day. There was some evidence that he had said just after the accident that his brakes had failed to work.

■■ Regardless of the condition of the brakes, it was gross negligence for the driver of the truck to disregard the red light of the traffic signal. This Court has no knowledge of any law, national, state, or municipal, that could be construed to justify the conduct of the driver of the truck in the circumstances. There are no legal principles that can exempt the driver of the truck from the charge of negligence. The defendant can not be exonerated by its request for a police escort. Officers in charge of such a troop movement are charged with the duty of seeing that a proper and sufficient police escort is provided or that the vehicles in their charge obey the traffic rules and regulations imposed on highway traffic generally. If the city fails to provide a proper escort to regulate traffic so that the military vehicles can pass in continuous procession without interruption, then the officers in charge of the military movement should detail military personnel to control traffic at highway intersections.

The officers in charge of the military movement, when asked by the Court what they considered a proper escort or convoy, said that it would consist of a police car at the head of each unit of the

convoy with a siren or other means of announcing the approach, and another police car traversing the flanks of the military column, in order to control traffic at intersections. One of the military personnel in the third unit testified that if a motor vehicle should be 120 feet or more behind the preceding vehicle in the convoy, or if there was no police or military escort convoying the movement, regulations directed the driver of a military vehicle to observe and comply with traffic lights and regulations.

It is apparent to the Court that the conduct of the truck driver at the time of the accident violated Army regulations, municipal ordinances, state law, and the general principles of law applied daily to travelers on our streets and highways.

Counsel for the defendant contended that the driver of the civilian automobile was guilty of negligence, which was the proximate cause of the accident. They insisted that it was negligence on her part not to see the procession of military trucks with their military insignia and lights. They contended that such a movement of military vehicles obligated her to yield the right-of-way, in spite of the fact that the traffic light was showing green on her side.

■ A view of the premises revealed that a driver approaching the intersection on Locust Avenue would not have much opportunity to see the procession of Army vehicles. They would hardly be visible except when traversing the intersection; and during the interval of a driver's approach not more than one or two Army vehicles would likely cross the intersection. A residence, trees, and shrubbery, on the southwest corner of the intersection would prevent a view of the military vehicles that had passed. On the northwest corner of the intersection is a store with a parking space for cars in front of it. The evidence revealed that automobiles were parked in that space at the time of the accident. The vision of automobiles approaching would be obstructed as the intersection was approached. In view of the facts and circumstances, the Court

is constrained to find that there was no evidence of any negligence on the part of the driver or the occupants of the Rivlin automobile.

■ The holding of the Court that the defendant is not exonerated because the officers of the military movement believed that the City would afford adequate police escort should not be construed as justification for the failure of the police officers to furnish an adequate escort. It is gross negligence for the City officials to assume the responsibility of safe convoy and then fail to furnish sufficient police force to meet the requirements and protect the traveling public. If the City does not have adequate police personnel and equipment to meet the requirements of a proper convoy, they should so inform the officers of the military and ask for a detail of military personnel to assist in convoy duties.

■ To allow the ordinary traffic lights to operate as usual without police attendance and thus invite the traveling public into the street crossings and, at the same time, permit Army or other vehicles to drive through the street crossings in violation of the stop signals of the red lights, is an invitation to collision and disaster. No one responsible for such a condition can be exonerated from responsibility. Whether the Government would be entitled to contribution from the City of Wheeling in the circumstances of this case need not be decided, because the City of Wheeling is not a party to this litigation, but the evidence reveals a condition and practice so dangerous that it should be brought to the attention of all officers of law having anything to do with the convoying of military vehicles, or other processions, through congested areas. When Government officials, federal or municipal, assume control of an area or an operation, they are under a duty to meet the responsibility adequately. Highway travelers are justified in reposing confidence in officers of law and in traffic signals operated in accordance with law. Travelers should not be beguiled into positions of danger and disaster.

As a result of the collision, the plaintiff Schwartz suffered a double fracture of the pelvis, a fracture of three or four ·ribs, a severe contusion of the chest, a strain of the back, and a severe injury to the bones of one knee. Her medical and other expense exceeded $2,000. Consideration of all the evidence indicated to the Court that $7,500 was a reasonable reward for her loss, impairment and suffering.

The plaintiff Franklin suffered a severe contusion of the chest and breast bone and severe nervous shock. The evidence revealed that this plaintiff had suffered previously from nervousness. She was peculiarly susceptible to severe nervous shock from this collision. The evidence indicated that the nervous reaction had not yet entirely abated. It is the judgment of the Court that an award of $2,500 is reasonable compensation for her impairment and suffering.

Judgment is, therefore, awarded to the plaintiff Schwartz against the defendant, the United States, for $7,500, together with costs; and judgment in favor of the plaintiff Franklin against the United States for $2,500, together with costs.

The motion of the defendants, Rivlin, that the case be dismissed as to them, is sustained.