SOUTHEASTERN EXPRESS COMPANY v. CITY OF CHARLOTTE.

(Filed 20 December, 1923.)

1. Taxation—Payment—Protest—Statues.

To test the legality of a tax imposed, the taxpayer should pay the same and sue to recover it in accordance with the provisions of C. S., 7979.

2. Taxation—Municipal Corporations—Cities and Towns—Express Companies—Statutes—Automobiles—Motor Trucks—Privilege Tax.

The tax imposed upon express companies by the provisions of sections 79, 79a, chapter 34, Public Laws of 1921, being an act to raise revenue, payable to the State upon a percentage of their mileage, and in certain sums of money to municipal corporations according to population, and also a privilege tax to the latter, prohibiting municipalities from collecting additional taxes thereon, does not include within its intent and meaning the tax imposed by section 29, chapter 2, Laws of 1921, in favor of municipal corporations for the privilege of operating a motor vehicle therein and in transporting property for hire.

3. Same.

Where an express company delivers goods to the consignee in cities, this service is in addition to that in smaller places, where deliveries are not so made, for which additional service compensation is included in its general express charges, and comes within the intent and meaning of chapter 2, section 29, Public Laws 1921, authorizing a tax of not exceeding $50 for each motor truck operated within the municipality.

4. Same—Courts—Judicial Knowledge.

The courts will take judicial notice that express companies do not deliver freight to the consignees in small places as they do in larger cities, and that in the latter the large express trucks employed in this service are damaging to the streets, which the municipality is obliged by statute to keep in proper repair for the benefit of its citizens.

5. Taxation—Constitutional Law—Commerce—Discrimination.

A statute permitting a municipal corporation to impose a tax on all express companies alike for delivering goods by trucks to consignees in a city, is uniform in its application, comes within the police powers of the State, and is not contrary to the Constitution in relation to either intrastate or interstate commerce, and the imposition of a tax therefor not to exceed $50 on each motor truck is held to be reasonable.

APPEAL by plaintiff from *Harding, J.,* at September Term, 1923, of MECKLENBURG.

This is a civil action. It was agreed by the parties to the action that the complaint, answer and judgment of the court below, exceptions and assignments of error, shall constitute the case on appeal to this Court.

The complaint alleges:

"First. That the plaintiff is, and was at the time hereinafter mentioned, a corporation organized and created by and under the laws of

the State of Alabama to conduct the business of an inter- and intrastate express company; and was at such times engaged in its business as an express company in the city of Charlotte, State of North Carolina, under the laws of the State of North Carolina.

"Second. That defendant was, and now is, a municipal corporation chartered and organized as such, by and under the laws of the State of North Carolina.

"Third. That defendant has levied and collected from plaintiff the sum of seventy-five dollars ($75), the maximum license and privilege tax provided for in 'An Act to Raise Revenue,' same being 'The Public Laws of North Carolina for the Year 1921,' sections 79 and 79a.

"Fourth. That in addition to the license and privilege tax levied and collected as aforesaid, the defendant, under section 4, subsection b, of. an ordinance known as The Revenue Ordinance, and entitled:

" 'An ordinance—levying, assessing, imposing, and defining the license and privilege taxes of the city of Charlotte for the fiscal year beginning 1 June, 1922, and ending 31 May, 1923.' Read, approved and adopted 13 June, 1922—has levied and collected a license tax of $25 on each of seven motor vehicles used and operated by the plaintiff in the conduct of its business as an express company in the city of Charlotte, making a total additional tax of $175.

"Fifth. That plaintiff has paid the additional license tax of $25 on each motor vehicle so used by it in the city of Charlotte, a total tax of $175, and notified defendant's agent, in writing, at the time that said tax was paid under protest, and within thirty days thereafter plaintiff demanded, in writing, from the defendant the return of said tax and that said tax has not been refunded within ninety days from the time of payment; the defendant is still in possession of said tax and refuses to repay or to refund said tax.

"Sixth. The plaintiff alleges and contends that the levy and collection by the defendant of the license tax of $25 on each of the seven motor vehicles used by plaintiff in the conduct of its business, as an express company, in the city of Charlotte is unlawful and void, for that chapter 34 of the Public Laws of 1921, entitled, 'An Act to Raise Revenue,' defines and limits the power and authority of the defendant to levy license and privilege taxes, and defendant is and was without lawful power to levy and collect said license tax."

The answer admits all of the allegations of the complaint except paragraph 6, which is denied.

The judgment of the court below was as follows:

"This cause coming on to be heard before his Honor, W. F. Harding, at the September Term, 1923, of the Superior Court of Mecklenburg County, and being heard upon the pleadings and the arguments of the

counsel for plaintiff and for defendant, and it appearing to the court that the tax in question is authorized by law and that the plaintiff is not entitled to recover: It is, therefore, ordered, adjudged and decreed that the action be dismissed and that the defendant recover of the plaintiff its costs."

To the foregoing judgment the plaintiff excepts. The exception was overruled, and the plaintiff assigns as error the judgment rendered, for that it is contrary to law, and appeals to this Court.

After the argument of this case in the court here, it was agreed between the parties that the Revenue Ordinance for the city of Charlotte for the year 1 June, 1922, to 31 May, 1923, referred to in the pleadings, be a part of the record of the case.

*F. M. Shannonhouse and T. W. Hawkins, Jr., for plaintiff.*
*Carrie L. McLean and C. A. Cochran for defendant.*

CLARKSON, J. The plaintiff paid the tax levied by the city, in accordance with the statute, and sued to recover the money. C. S., 7979.

This suit is brought on the ground that defendant has levied and collected from plaintiff the sum of seventy-five dollars ($75), the maximum privilege or license tax provided for in "An Act to Raise Revenue," same being "The Public Laws of North Carolina for the Year 1921," sections 79 and 79a. That in addition to the privilege or license tax levied and collected as aforesaid, the defendant, under an ordinance known as the Revenue Ordinance of the City of Charlotte, has levied and collected a license tax of $25 on each of seven motor vehicles used and operated by the plaintiff in the conduct of its business as an express company in the city of Charlotte, making a total additional license tax of $175.

Public Laws of North Carolina 1921, ch. 34, "An Act to Raise Revenue," is as follows:

"Sec. 79. That every express company doing business in this State shall, on or before the thirtieth day of July in each year, make and return to the Corporation Commission a statement of the total number of miles of railroad lines over which such express company operates in this State; the said Corporation Commission shall certify the same to the State Treasurer as a basis for assessment and collection of the tax levied in the following schedule:

"Sec. 79a. Each express company doing business in this State shall pay to the State Treasurer an annual privilege or license tax as follows: Any such company which earned from its express transportation business not more than six per cent upon its capital invested the previous calendar year shall pay at the rate of five dollars ($5) per mile. Any

such company which so earned as much as seven per cent and less than eight per cent upon its capital invested the previous calendar year shall pay at the rate of six dollars ($6) per mile. And any such company which so earned eight per cent or more upon its capital invested the previous calendar year shall pay at the rate of seven dollars ($7) per mile. Any such company not having had previous earnings shall pay at the rate of five dollars ($5) per mile: *Provided,* that no county shall levy any tax under this section. There may be levied and collected by every incorporated municipality in the State of North Carolina from each express company, for the privilege of doing business within the municipal limits of said incorporated municipalities, a privilege or license tax, to be computed and based on the population of said municipalities, as follows: Incorporated municipalities having a population of five hundred people or less, five dollars per annum; incorporated municipalities having a population of five hundred people and not exceeding one thousand people, ten dollars per annum; incorporated municipalities having a population of one thousand and not exceeding five thousand people, twenty dollars per annum; incorporated municipalities having a population of five thousand and not exceeding ten thousand people, thirty dollars per annum; incorporated municipalities having a population of ten thousand and not exceeding twenty thousand people, fifty dollars per annum; incorporated municipalities having a population of exceeding twenty thousand people, seventy-five dollars per annum: *Provided further,* that nothing in this section shall be construed to authorize the imposition of any tax upon interstate commerce, or upon any business transacted for the Federal Government."

The above act says: "*There may be levied and collected by every incorporated municipality in the State of North Carolina, from each express company, for the privilege of doing business within the municipal limits of said incorporated municipalities, a privilege or license tax,*" etc.

Public Laws 1921, ch. 2, sec. 29, is as follows:

"Sec. 29. The foregoing fee shall be paid to the Secretary of State at the time of issuance of said registration certificates, permits, or licenses. They shall include all costs of registration, issuance of permits, licenses, and certificates, and the furnishing of registration plates, and shall be in lieu of all other State or local taxes (except *ad valorem*), registration or license fees, privilege taxes, or other charges: *Provided, however,* a county, city, or town may charge a license or registration fee on motor vehicles in the sum of one dollar ($1) per annum: *Provided further,* that no county, city, or town shall charge or collect an additional fee for the privilege of operating a motor vehicle, either as chauffeur's or driver's license: *Provided,* nothing herein shall prevent the governing authorities of any city from regulating, licensing, controlling

of chauffeurs and drivers of any such car or vehicle, and charging a reasonable fee: *Provided further,* that any city or town may charge a license not to exceed fifty dollars ($50) for any motor vehicle used in transporting persons or property for hire in lieu of all other charges, fees, and licenses now charged."

The above act says: *"Provided further, that any city or town may charge a license not to exceed fifty dollars ($50) for any motor vehicle used in transporting persons or property for hire in lieu of all other charges, fees, and licenses now charged."*

The municipalities that have paved or dependable streets are at heavy expense to make repairs and improvements. The Legislature, to reimburse the cities for their large outlay for repairs and improvements, made necessary from the use of the streets by motor vehicles, passed the above act. The owners of motor vehicles who charge for transporting persons or property, the municipalities are given a right to "charge a license not to exceed $50 for any motor vehicle used in transporting persons or property for hire in lieu of all other charges, fees and licenses now charged."

The Revenue Ordinance of the city of Charlotte imposes the following tax:

### EXPRESS COMPANIES

State Revenue Act..................................................... .......................$ 75.00
And in addition, on each express wagon or truck operated on
    public streets of the city a tax of ..... ......... . .............. ... ...... .   25.00

From the State Revenue Act it is clear that the $75 tax is levied *for the privilege of doing business,* etc.

It will be noted that the Revenue Act makes the tax for doing business fixed according to population. In an incorporated municipality having a population of 500 or less $5, etc. The intent of this act above mentioned clearly indicates that the "privilege of doing business" of the express companies would ordinarily mean a delivery to the consignee at the place of business or depot of each express company in each municipality where they do business, and not by truck to the home or place of business of the consignee. The scale of tax according to population seems to be imposed with that intent.

"The courts take judicial notice of the general course of business and the usual method of transacting it. Judicial notice will be taken of the community's standard of prudent business methods, and of the ordinary rules and necessities of business, of such matters connected with a business which is one of the main enterprises within the jurisdiction as are common knowledge to all of the people of the jurisdiction." 23 C. J., 62.

In the smaller municipalities it is a matter of common knowledge that the express companies have no truck or delivery wagon. The delivery of goods, wares and merchandise are made to the express company, just like they are to a railroad company by the consignor; the express company and the railroad company, when the goods reach their destination, notify the consignee.

In the larger municipalities, where the express companies have to compete to some extent with the parcel post, and these municipalities have paved or dependable streets, the express companies at their option deliver by truck.

The ordinary "privilege of doing business" is confined under the statute to goods, wares and merchandise handled in the place of business in each locality of the respective express depots. To deliver the goods, wares or merchandise from the place of business or depot of each express company to the consignee requires the use of trucks. These trucks are a continual wear and tear to the streets of the municipality. As a matter of common knowledge the "hire" for this delivery by truck over the streets from the place of business or depot to the residence or business place of the consignee takes additional employment of labor, time and truck conveyance, and naturally an extra sum is put on the charge for carrying these goods, wares, and merchandise for this extra service.

The Legislature passed the act before mentioned allowing the municipalities to charge a license not to exceed $50 for any motor vehicle used in transporting property for hire. Black in his Law Dictionary defines "hire" as "compensation for the use of a thing or for labor or services." The express company gets extra compensation to pay the additional labor and use of the truck to deliver the goods, wares, and merchandise from the local place of business or depot of the express company to the consignee at his place of business or his home. It was stated on the argument of this case, and not controverted: "The two express companies doing business in Charlotte operate on the streets of the city more than a score of heavily built trucks, each weighing 4,800 pounds, and with carrying capacity of four or five thousand pounds. These trucks are operated almost continuously throughout the day, many of them practically all night, in delivering goods and in meeting trains that come in every day, including Sundays, and at practically all hours of the day and night. There is no limit to the number of such trucks they may operate. For this privilege the city is asking that the express companies pay a license tax of less than seven cents per day per truck, for registration, regulation, and the damage that is done to the streets, for such police supervision as is required," or $25 a year on each truck.

It is contended by the defendant that the service rendered by the express company is a unit, and in the conduct of interstate and intrastate business the tax on the trucks is unconstitutional and void. The State gave power to the city to levy a tax for "doing business," the uniform ordinary business of an express company. In the instant case the company goes beyond its ordinary business of having depots and places of business in municipalities and starts a new line of more efficient endeavor and, in this change from the ordinary "doing business," sees fit to deliver for compensation or hire the goods, wares and merchandise received by it in its place of business or depot to the consignee at his place of business or residence. In doing this it uses seven heavily built trucks, each weighing 4,800 pounds, with carrying capacity of four or five thousand pounds, and uses these heavy trucks day and night, including Sundays, and to pay for the wear and tear of these trucks on the streets, which the city is in duty bound to keep in repair, the city has imposed a tax of $25 a year on each truck *for the privilege of operating motor trucks upon the streets of the city.* This power is a police regulation and is constitutional.

*Dalton v. Brown,* 159 N. C., 175, lays down the following:

"The only constitutional restriction upon the power of the Legislature in classifying vocations and laying a tax of a different amount upon the different occupations is that the tax shall be uniform upon all in each classification.

"An act authorizing a levy of a tax of two cents per mile on each 1,000 feet of mill logs, lumber, or other heavy material hauled by 'any lumber company, corporation, person or persons engaged in the lumber business' and using the public roads of a certain county, is not the levy of a property tax, which is required to be uniform and *ad valorem,* but a taxing of a particular vocation, which is uniform in its application to that class, is without discrimination therein, and not in contravention of the Fourteenth Amendment of the Federal Constitution, or of Article V, section 3, and Article I, section 17, of the Constitution of North Carolina.

"The levying of a tax upon those hauling mill logs, etc., upon a public road of a certain county is within the discretionary power of the Legislature, and comes within its police power, with which the Fourteenth Amendment to the Federal Constitution does not interfere." *S. v. Holloman,* 139 N. C., 648; *S. v. Bullock,* 161 N. C., 225; *S. v. Taylor,* 170 N. C., 695; *S. v. Kelly, ante,* p. 371.

In *Kane v. New Jersey,* 242 U. S., 160, *Mr. Justice Brandeis* says: "The power of a State to regulate the use of motor vehicles on its highways has been recently considered by this Court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right

to exact reasonable compensation for special facilities afforded as well
as reasonable provisions to insure safety. And it is properly exercised
in imposing a license fee graduated according to the horse-power of
the engine. *Hendrick v. Maryland,* 235 U. S., 610; 57 L. Ed., 385; 35
Sup. Ct. Rep., 140."

The tax does not discriminate, it is on all express companies alike—
"All feed out of the same spoon."

*Clark, C. J.,* in an exhaustive and learned discussion in *Bickett v. Tax
Commission,* 177 N. C., 436, says: "In *Mercantile Co. v. Mount Olive,*
161 N. C., 125, it is said: 'In *Lacy v. Packing Co.,* 134 N. C., 572, the
above authorities and others are cited, the Court thus summing up the
law: It is settled that a *license tax is uniform when it is equal upon
all persons belonging to the described class upon which it is imposed.'*
It is pointed out that the constitutional provision requiring uniformity
applies only to property, but as to license taxes, it quoted with approval
the following from *S. v. Stephenson,* 109 N. C., 734 (26 Am. St., 595):
'It is within the legislative power to define the different classes and to
fix the license tax required of each class. All he can demand is that
he shall not be taxed at a different rate from others in the same occu-
pation, as classified by legislative enactment. This is stated as a uni-
versal rule. 1 Cooley on Taxation (3d Ed.), 260.' "

In the instant case the Southeastern Express Company is using, night
and day and Sundays, seven of its heavy trucks, weighing and carrying
capacity of about 9,000 pounds, on the streets of the city of Charlotte.
The city is bound, under the law, to keep its streets in repair. The city
in its revenue ordinance imposes a yearly tax of $25 "on each express
wagon or truck operated on the public streets of the city." For carrying
on its large business, the express company only pays $75 a year under
the State Revenue Act to the city of Charlotte. It is now contesting
the payment of the $25 a year tax on each truck. It claims that the
$75 tax for "doing business" covers all the tax they should pay. That
the State act giving the municipalities of the State power to "charge
a license not to exceed $50 for any motor vehicle used in transporting
persons or property for hire" is not applicable to express companies,
and if so, the act is unconstitutional and void. We cannot so hold.
The tax is reasonable, does not discriminate and is constitutional. It
is a just sum imposed to aid the city in keeping in repair the streets
which the heavy trucks help to wear out and destroy. These companies
should bear the equal burden of government like others in similar situa-
tions. They get the benefits; they should share in the burdens.

We can see no error in the court below giving judgment for defendant
city of Charlotte.

Affirmed.