E. Todd Wheeler *et al.*, Plaintiffs-Appellees, *v.* The Aetna Casualty and Surety Company, Defendant-Appellant.

(No. 57607;

First District (1st Division)—May 14, 1973.

Kirkland & Ellis, of Chicago, (Gary M. Elden, Donald J. Duffy, and William H. Symmes, of counsel,) for appellant.

Tom L. Yates and Frederick L. Goff, both of Chicago, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This is an appeal from a summary judgment entered in a declaratory judgment action for the plaintiff architects against their public liability insurer, holding, in substance, that it should have assumed their defense in a Structural Work Act suit filed against a hospital, its general contractor and them by a worker who fell from a scaffold when a plank gave way.

On November 11, 1968, Aetna issued to Perkins and Will a Public Liability insurance policy which included by endorsement, the following exclusion:

"EXCLUSION
'(ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY)

'IT IS AGREED THAT THE INSURANCE DOES NOT APPLY TO BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF ANY PROFESSIONAL SERVICES PERFORMED BY OR FOR THE NAMED INSURED, INCLUDING

'(1) THE PREPARATION OR APPROVAL OF MAPS, PLANS, OPINIONS, REPORTS, SURVEYS, DESIGNS OR SPECIFICATIONS AND

'(2) SUPERVISORY, INSPECTION OR ENGINEERING SERVICES."

On April 20, 1969, Perkins and Will also took out a Professional Liability insurance policy from another (CNA) insurer, the coverage being stated as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the insured's capacity as an architect or an engineer and if such legal liability is caused by an error, omission or negligent act."

On June 20, 1964, Perkins and Will entered into a contract with the Silver Cross Hospital for professional services in connection with additions and alterations to that hospital. John Wagner, an ironworker employed by a subcontractor, claims to have been injured on September 29, 1969, while working on that job and on January 22, 1970, filed a Structural Work Act suit against the hospital, the general contractor, S. N. Nielsen & Company, and the architects, Perkins and Will.

Said complaint, *inter alia*, alleged:

"2. That on September 29, 1969, the defendants, SILVER CROSS HOSPITAL, E. TODD WHEELER AND THE PERKINS & WILL PARTNERSHIP, AND S. N. NIELSEN & COMPANY, A Corporation, and each of them, were entities simultaneously and concurrently in charge of the erection and construction of the aforesaid building or other structure located on the premises of the Silver Cross Hospital, located at 500 Walnut, in said city, county and state.

3. That on September 29, 1969, and prior thereto, the plaintiff, and other construction workers, were required to work upon certain scaffolding which was then and there being used in the erection and construction of the said building or other structure.

4. That on the above date, and prior thereto, the aforementioned scaffold was erected, controlled and placed in a manner which was not safe, suitable and proper for the protection of working men working on or about the same.

5. On the above date, the plaintiff, in the course of his employment, was upon the aforementioned scaffold and fell therefrom when a plank broke or gave way by virtue of the faulty erection, operation and placing of said scaffold."

On January 27, 1970, Perkins and Will forwarded a copy of the Wagner complaint and summons to Aetna with an accompanying letter demanding that it defend them. A copy of this was sent to CNA that same day with an accompanying letter advising that the architects had asked Aetna to assume their defense but stating that, if Aetna declined, they would expect CNA to defend and hold them harmless under the said Professional Liability policy.

On February 4, 1970, Aetna wrote Perkins and Will, taking the position that the allegations of the complaint were not covered under the Public Liability policy and were expressly excluded under the endorsement above quoted. It suggested that the complaint be forwarded to their Professional Liability carrier.

CNA then engaged Tom Yates and Fred Goff to defend the said Wagner suit, which they are doing and said action is still pending in the circuit court.

On July 27, 1971, the instant declaratory judgment action was filed by said attorneys Yates and Goff in the names of the architects, with CNA paying their fees. After the filing of various pleadings, motions and affidavits and the taking of a deposition of William Hurley, house counsel for Perkins and Will, both parties moved for summary judgment, which was entered in favor of the plaintiff architects and against the defendant Aetna. In said summary judgment order the trial judge took the position, *inter alia*, that:

"paragraph 4 means, to me, that each defendant 'erected, controlled and placed in a manner which was not safe, suitable and proper' a scaffold,"

and therefore that:

"the complaint stated a cause of action potentially covered by Aetna breached by refusing to defend and is now estopped to deny coverage."

This appeal followed.

■■ As the plaintiff points out, there is a line of cases in Illinois which holds generally that an insurer is bound to defend its insured when the allegations of the injury complaint bring the claim potentially within the coverage of the policy; or, in other words, the injury complaint must show on its face that there is no coverage before an insurance carrier can safely refuse to defend. Three cases, *Sims v. Illinois Nat. Casualty Co. of Springfield*, 43 Ill.App.2d 184, 193 N.E.2d 123 (3d Dist. 1963), *Mc-*

*Fadyen v. North River Insurance Co.*, 62 Ill.App.2d 164, 209 N.E.2d 833 (2d Dist. 1965), and *Palmer v. Sunberg*, 71 Ill.App.2d 22, 217 N.E.2d 463 (3d Dist. 1966), are cited. All arose where the insured, whom the company involved had refused to defend, had suffered a judgment. In the first (*Sims*), the injury complaint alleged that plaintiff was injured while riding as a passenger in a truck owned and operated by Sims. The insurer refused to defend on the ground that plaintiff was the defendant's employee in the course of his employment at the time and was thus excluded under a Workmen's Compensation exclusion. In the second (*McFadyen*), the insurer refused to defend on the ground that the automobile being driven at the time of the accident was not an "owned" automobile and was hence excluded; and in the third (*Palmer*), a minor bitten by a dog, sued the owner thereof under a Home Owner's policy and the company refused to defend on the ground that the premises were being used for business and not residential purposes and were thus excluded. These are representative of the cases generally.

Assuming for the present that the general statements above set out correctly state the Illinois law (there are certain limitations and exceptions, particularly when the allegations collide with what the court judicially knows, which will be referred to later on), let us put ourselves in the places of the claim supervision for the defendant Aetna and of the trial court as we read the complaint in this case against the two policies involved.

As set out in the above factual resume, the plaintiff architects had entered into a contract with the Silver Cross Hospital for professional services in connection with additions and alterations to that hospital. In January, 1970, John Wagner, an ironworker employed by a subcontractor filed a Structural Work Act suit against said hospital, the general contractor, S. N. Nielsen & Company, and the plaintiff architects; and copies of said complaint, with covering letters were sent to Aetna, the Public Liability carrier and to CNA, the Professional Liability carrier.

Insofar as is here pertinent the Structural Work Act complaint alleged:

"2. That on September 29, 1969, the defendants, SILVER CROSS HOSPITAL, E. TODD WHEELER AND THE PERKINS & WILL PARTNERSHIP, AND S. N. NIELSEN & COMPANY, A Corporation, and each of them, were entities simultaneously and concurrently in charge of the erection and construction of the aforesaid building or other structure located on the premises of the Silver Cross Hospital, located at 500 Walnut, in said city, county and state.

3. That on September 29, 1969, and prior thereto, the plaintiff, and other construction workers, were required to work upon cer-

tain scaffolding which was then and there being used in the erection and construction of the said building or other structure.

4. That on the above date, and prior thereto, the aforementioned scaffold was erected, controlled and placed in a manner which was not safe, suitable and proper for the protection of working men working on or about the same.

5. On the above date, the plaintiff, in the course of his employment, was upon the aforementioned scaffold and fell therefrom when a plank broke or gave way by virtue of the faulty erection, operation and placing of said scaffold."

■■ It would appear to us to be clear that paragraph 2, if it alleges anything against these architects, alleges liability arising only out of their "(1) Preparation or approval of Maps, Plans, Opinions, Reports, Surveys, Designs or Specifications", or "(2) Supervisory, Inspection or Engineering Services" and which was expressly excluded from the coverage afforded by the Aetna Public Liability policy and fell precisely within the coverage of the CNA Professional Liability policy which provided that:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the insured's capacity as an architect or an engineer and if such legal liability is caused by an error, omission or negligent act."

It is interesting and instructive to note that, subsequent to the trial court's summary judgment here, the Supreme Court published its opinion in *Van Dekerkhov v. City of Herrin*, 51 Ill.2d 374, 282 N.E.2d 723. In affirming the trial court's dismissal of the Structural Work Act suit against the City as the owner of the premises involved, the court at pages 375-377, said:

"The complaint alleged that the defendant was the owner of a block of business buildings 'and was in the process of, had charge and control of the demolition of said buildings.' It also alleged that the plaintiff 'was employed as a foreman and laborer by John Vander, a general contractor, engaged in the demolition and removal of said buildings;' that there were no scaffolds erected by the defendant as required by the statute, and that as a result of the defendant's wilful violation of the statute the plaintiff was injured.

The narrow issue is the sufficiency of the allegation that the defendant 'had charge of' the work. That allegation is in the language of the statute, which imposes liability upon '[a]ny owner,

contractor, subcontractor or foreman or other person having charge of the * * * removal * * * of any building * * *' who wilfully fails to comply with its provisions. Apart from the allegation that the defendant owned the buildings being demolished, the complaint states no facts from which it may be concluded that the defendant 'had charge of' the demolition * * *.

The complaint in this case contains two allegations which, if they are not contradictory, certainly do not appear upon their face to be consistent. It is alleged: (1) that the plaintiff was employed as a "foreman and laborer" by the general contractor who was engaged in demolishing the buildings, and (2) that the defendant had charge of and was in the process of demolishing the same buildings. The situation described in the complaint is at best ambiguous, and the plaintiff, although afforded an opportunity to remove the ambiguity, refused to do so.

If there were circumstances, either resulting from the terms of the contract between the owner and the general contractor whom the owner had employed to demolish the buildings, or from the conduct of the parties under that contract, which indicated that the owner had retained control, they should have been stated in an amended complaint. Numerous cases have described the kind of conduct or contractual terms which indicate that an owner has retained 'charge.' (See, *e.g.*, *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316; *Kobus v. Formfit Co.* (1966), 35 Ill.2d 533.) When the plaintiff, who was one of those upon whom the statutory duty was imposed, refused to take advantage of the opportunity afforded him to amend his complaint to show upon what he based his claim that the owner 'had charge of' the work, the trial court was warranted in dismissing his complaint."

Passing now to paragraphs 3, 4 and 5, while said paragraphs allege that certain scaffolding was erected which "was not safe, suitable and proper for the protection of working men working on or about the same," and that the plaintiff fell from said scaffold when a plank broke or gave way, there are no allegations whatsoever as to which, if any, of the three defendants erected, controlled or placed said scaffold.

The trial judge, however, in the summary judgment expressed the view that:

"paragraph 4 means, to me, that each defendant 'erected, controlled and placed in a manner which was not safe, suitable and proper' a scaffold."

and therefore that:

"the complaint stated a cause of action potentially covered by

Aetna that Aetna breached by refusing to defend and is now estopped to deny coverage."

■■ We disagree and are of the considered opinion that, insofar as the scaffolding is concerned, there are no allegations whatsoever to tie the defendant architects into the coverage of the Aetna Public Liability policy and that the liability, if any, falls clearly within the coverage of the CNA Professional Liability policy.

In this aspect of the case, the plaintiffs cite and rely heavily upon *Shaw v. Aetna Casualty and Surety Co.*, 407 F.2d 813 (7th Cir. 1969), which was an action by some architects, represented by the same counsel as here represent the architect plaintiffs, against the same Public Liability carrier (Aetna) as is sued here. There a worker was hurt when an outrigger used on a hoist fell upon him. The complaint, among other things, alleged that:

> "* * * a certain material hoist was erected or constructed for use in the erection of the aforesaid structure; that *each of the defendants* by and through their servants or agents in their behalf were in charge of the erection of the aforesaid structure.";

and that:

> "* * * the defendants, and *each of them*, wilfully did fail to do one or more of the following in violation of the above mentioned statutes: wilfully failed to place and operate the hoist so as to prevent the falling of material and to give adequate protection to those underneath, and wilfully failed to provide the hoist with a covering and a safeguard to protect persons working at or near the hoist." (Emphasis supplied).

In reversing a judgment for the defendant and remanding the case for the assessment of damages, the Federal Court of Appeals at pages 814-815, said:

> "Aetna relies primarily on Endorsement T-28, a part of the policy which provides that the policy does not apply to injury arising out of defects in maps, plans, designs or specifications, prepared, acquired or used by the insured, or due to general supervision of the insured in connection with the operations of any contractor.
>
> It is apparent the trial court relied heavily on its interpretation of the allegation in the Ivanov complaint that Shaw's duties as an architect were to design and supervise and that those were Shaw's only duties at the construction site, and that any liability of Shaw necessarily arose out of defects in design or resulted from general supervision.
>
> However, nowhere in the Ivanov complaint is there any allega-

tion that Shaw designed the hoist in question or that there was any defect in any map, plan, design or specification prepared or used by Shaw. But there are allegations that Shaw, themselves, among other things, wilfully failed to place and operate the hoist properly.

We think the allegations in the Ivanov complaint were sufficiently broad and if established by evidence, would spell liability by Shaw, and that Aetna should have defended since such liability was potentially within its policy."

Since, in *Shaw* the injury complaint alleges that Shaw, themselves, had failed to place and operate the hoist properly, whereas in the case at bar, no similar allegations are made, the case is not applicable. Furthermore, we tend to doubt that *Shaw* was correctly decided by the Federal Court. What said opinion ignores completely is the very old and well established doctrine of judicial notice.

The solemn arguments in this case, for the most part, ignore the realities which everyone knows. Although the Bellman, in Lewis Carroll's (Charles Dodgson) "Hunting of the Snark," successfully tells his crew that:

"What I tell you three times is true,"

such should not be so in a court of law, or else, as Charles Dickens says in Oliver Twist,

"The law is a ass, a idiot."

■■ Perhaps the primary principle of judicial notice is that "judges ought not to be more ignorant than the rest of mankind" or stated otherwise that "courts should at least know what everyone else knows."

One of the earliest statements to this effect is from Judge Coleridge's dissenting (but often quoted) opinion in *Lumley v. Gye*, 118 Eng. Rep. 749 (Queens Bench 1853), where he said that:

"* * * Nor, I think, can [267] it be successfully contended that we may not take judicial cognisance of the nature of the service spoken of in the declaration. Judges are not necessarily to be ignorant in Court of what every one else, and they themselves out of Court, are familiar with; nor was that unreal ignorance considered to be an attribute of the Bench in early and strict times. We find in the Year Books the Judges * * * distinguishing between private chaplains and parochial chaplains from the nature of their employments: * * *."

In 15 R.C.L. 1054, it is said, at pages 1057-58,

"* * * justice does not require that courts profess to be more ignorant than the rest of mankind. * * *."

This has often been quoted and relied upon by the courts. In *Mills v. Denver Tramway Corp.*, 155 F.2d 808 (10th Cir. 1946), the court, at page 811, said:

"\* \* \* Courts will take judicial notice of all facts which are generally known and accepted. The Colorado Supreme Court, in Gray v. Huntley, 77 Colo. 478, 238 P. 53, 55, quoted with approval the following statement from 15 R.C.L., Judicial Notice, § 2: 'Justice does not require that courts profess to be more ignorant than the rest of mankind.' It is doubtful if a case could be found in which it was ever intimated that a plaintiff must prove that a railroad engine had a bell or whistle before he could charge the company with negligence in failing to ring the bell or blow the whistle. We have judicial knowledge, together with all intelligent men, that automobiles are equipped with horns, because we know that such is the fact. \* \* \*"

To the same effect, see *Sundene v. Koppenhoefer*, 343 Ill.App. 164, 167-168; *Jones v. Fritz*, 353 S.W.2d 393, 395 (Mo. App. 1962); *Cameron v. Goree*, 182 Ore. 581, 189 P.2d 596, 603; *Markulics v. Maico Co.*, 74 Cal.App.2d 66, 168 P.2d 35, 36; *Keefe v. O'Brien*, 116 N.Y.S.2d 286, 288; *Elder v. Delcour*, 364 Mo. 835, 269 S.W.2d 17, 19-20; *Hersum v. Kennebec Water District*, 151 Me. 256, 117 A.2d 334, 338.

This is true of prevailing trade practices and professions.

In *Lynn v. Farm Bureau Mutual Automobile Insurance Co.*, 264 F.2d 921 (4th Cir. 1959), the court at page 924, points out:

"\* \* \* In North Carolina, as in other states, courts take judicial notice of the general course of business and the usual methods of transacting it. Southeastern Express Co. v. City of Charlotte, 1923, 186 N.C. 668, 120 S.E. 475, 477. \* \* \*".

In *Dystra v. State*, 42 Ohio App. 141, 181 N.E.2d 488, the court, at page 490, said:

"\* \* \* It is a matter of common knowledge that the duties of a steward and those of a chef are distinct and different. ·

A 'chef' is defined by lexicographers as a male head cook.

A 'steward' is defined as a person intrusted with the management of affairs not his own; one who manages or disburses for another or others; one in general charge overseeing the servants, etc.

It is therefore apparent that there is a wide distinction between the duties of a chef and those of a steward. \* \* \*"

In *Elizabethtown Lincoln Mercury v. Jones*, 313 Ky. 321, 231 S.W.2d 42, the court, at page 44, took the view that:

"\* \* \* Courts may take judicial knowledge of prevailing economic conditions and trade practices. Burton v. Burton's Com-

mittee, 262 Ky. 499, 90 S.W.2d 687; Bryan v. Security Trust Co., 296 Ky. 95, 98, 176 S.W.2d 104; Am. Jur. 'Evidence' Vol. 20, Sec. 110."

In an article entitled "Judicial Notice" 15 R.C.L., in section 51, page 1123, it is said:

"\* \* \* The general custom and course of business in any trade if they be sufficiently notorious are also proper subjects of judicial observation. \* \* \*" (Footnote omitted.)

See also *Wohl v. Yelen,* 22 Ill.App.2d 455, 459, 161 N.E.2d 339; *Robertson Products v. Nudelman,* 389 Ill. 281, 286; *Gaster v. Coldiron,* 297 A.2d 384 (Del. S.C. 1972); *Stenberg v. Buckley,* 245 Iowa 622, 61 N.W.2d 452, 455; *Porter v. Karavas,* 157 F.2d 984, 986 (6th Cir. 1946).

■■ The second principle of judicial notice is that courts must read pleadings as though containing a statement of all matters of which they are required to take judicial notice, even when the pleadings contain an express allegation to the contrary.

In *Chas. L. Harney, Inc. v. State,* 31 Cal. Rptr. 524, the court, at pages 529-530, took the occasion to say:

" 'That matters judicially noticed may be considered in construing the pleadings is well settled." (Contractor's Safety Assn. v. California Compensation Insurance Co. (1957) 48 Cal.2d 71, 75, 307 P.2d 626, 628 and cases there collected.) As was said in Chavez v. Times-Mirror Co. (1921) 185 Cal. 20, 23, 195 P. 666, 668 'in the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary.' The rule is therefore well established that a complaint good on its face is nevertheless subject to demurrer when facts not alleged but judicially noticed render it defective. (Watson v. Los Altos School Dist., supra, 149 Cal. App. 2d 768, 771, 308 P.2d 872; Byrne v. Harvey (1962) 211 A.C.A. 109, 113, 27 Cal. Rptr. 10.) Witkin states the reason for such rule: 'The theory is that the pleader should not be allowed to by-pass a demurrer by suppressing facts which the court will judicially notice. The principle is that of *truthful pleading,* and is applied for the same reason as in the similar situation of pleaded exhibits which contradict allegations.' (2 Witkin, Cal. Procedure, Pleading § 208, p. 1185; original emphasis.) We therefore proceed to examine plaintiff's second amended complaint in the light of the above-mentioned official files and records of which we take judicial notice in order to determine whether they render the pleading defective."

In *Taliaferro v. County of Contra Costa*, 6 Cal. Rptr. 231, the court, at 234, said:

> "While the allegations of a complaint are deemed true in ruling upon demurrers, where an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity. French v. Senate, 146 Cal. 604, at pages 607-608, 80 P. 1031, 69 L.R.A. 556. * * *"

In a long article on Judicial Notice in 15 R.C.L., it is said, in section 5, at pages 1062-1063:

> "* * * Since judicial notice is not generally dependent on the pleadings, it has been held that matters properly subject thereto are not affected by a demurrer. In such case the demurrer is not taken to admit anything that is contrary to the judicial knowledge of the court. * * *"

Illinois follows this rule. In *Jackie Cab Co. v. Chicago Park Dist.*, 366 Ill. 474, 9 N.E.2d 213, our Supreme Court, at pages 479-480, said:

> "* * * While it is charged that white drivers have violated the ordinance, no single, specific instance is cited, nor is any company or person named. The allegations are entirely general in their character as to the white drivers and are mere conclusions of the pleader. Courts are not at liberty to entirely disregard facts of general knowledge of which the courts, themselves, are cognizant. The fact is that, aside from the allegations of the bill, general information among residents of the Chicago area indicates that any person hiring a cab would presume that he had the right of direction. * * *"

And in *Cohen v. North Ave. State Bank*, 304 Ill.App. 413, 26 N.E.2d 691, the judgment debtor's attorney, in instituting garnishment against some 27 banks, expressly alleged in his affidavit that:

> "affiant hath just reason to believe that the 27 banks (naming them), are indebted to said defendant herein for the estate or effects of said defendants in their hands."

In affirming the trial court's order quashing the garnishment writs, this court, at page 421, said:

> "The area in which the 27 banks are located contains a population of about 3,500,000 and we think it is so self-evident that even the court will take judicial notice of the fact that one practicing lawyer in Chicago did not have just reason to believe that the 27 banks were indebted to the 48 persons. * * *"

■■ The third principle of judicial notice is that the failure or even refusal of a trial court to take judicial notice of a fact does not prevent an appellate court from doing so.

In *Ward Manufacturing Co. v. Miley,* 131 Cal.App.2d 603, 281 P.2d 343, that court, at page 347, said:

> "* * * Indeed, a reviewing court will take judicial notice of matters properly the subject thereof even if it appears that the trial judge did not do so. Varcoe v. Lee, 180 Cal. 338, 341-342, 181 P. 233; Greif v. Dullea, 66 Cal.App.2d 986, 998, 153 P.2d 581; Rogers v. Cady, 104 Cal. 288, 290, 38 P. 81."

In *De Martini v. Department of Alcoholic Beverage Con.,* 30 Cal. Rptr. 668, the court, at page 681, said:

> "* * * An appellate court may properly take judicial notice of any matter of which a trial court may take judicial notice (Varcoe v. Lee, supra, 180 Cal. 338, 343, 181 P. 223) and the failure or refusal of a trial court to take judicial notice of a fact or matter does not preclude an appellate court from giving proper effect thereto. (People v. Tossetti (1930) 107 Cal. App. 7, 12, 289 P. 881; Ward Mfg. Co. v. Miley (1955) 131 Cal.App.2d 603, 609, 281 P.2d 343; Varcoe v. Lee, supra; Rogers v. Cady (1894) 104 Cal. 288, 290, 38 P. 81.)"

And, in *Chas. L. Harney, Inc. v. State,* 31 Cal. Rptr. 524, the court, at page 529, said:

> "* * * The fact that the instant record does not affirmatively show that the trial court took judicial notice of these records in arriving at its decision does not affect or impair our power to do so. (Taliaferro v. County of Contra Costa (1960) 182 Cal. App. 2d 587, 592, 6 Cal. Rptr. 231.) * * *"

In *Robinson v. Robinson,* 70 Idaho 122, 212 P.2d 1031, the court, at page 1033, said:

> "* * * If the trial court does not take notice of a fact cognizable by it, the reviewing court may do so, even so. 5 C.J.S., Appeal and Error, § 1488, p. 134, Hill v. Bice, 65 Idaho 167, 139 P.2d 1010; Standley v. Knapp, 113 Cal.App.: 91, 298 P. 109."

In an article on Judicial Notice in 15 R.C.L., it is said, in section 6, at pages 1063-1064:

> "6. *Appellate Courts.*—A higher court on appeal will take judicial cognizance of any matter of which the court of original jurisdiction might take notice.
>
> \* \* \*
>
> In several cases too appellate courts, without attempting to lay down any rule on the subject, have recognized facts which had been ignored by the trial court and certain it is that the failure or refusal of a trial court to take notice of a proper fact does not prevent the appellate court from giving effect thereto. * * *"
> (Footnotes omitted.)

Summarizing the cases dealing with judicial notice, three general principles emerge:

First, that judges ought not to be more ignorant than the rest of mankind; that courts should at least know what everyone else knows;

Second, that courts must read pleadings as though containing a statement of all matters of which they are required to take judicial notice, even when the pleadings contain express allegations to the contrary; and

Third, that the failure or even refusal of a trial court to take judicial notice of a fact does not prevent an appellate court from doing so.

Applying these principles to *Shaw,* even though the injury complaint there expressly alleged that the architects themselves wilfully failed to place and operate the hoist properly, the court should have judicially noticed what everyone else knows (*i.e.,* that employees of contractors and subcontractors place and operate hoists and that architects and their employees never do so) and should have dismissed the defendant architects from the case, unless they could be held in on allegations to the effect that they had failed in their professional duties as architects in connection with their planning or supervision of the work, which would, of course, put the duty to defend squarely on their Professional Liability carrier, not on their Public Liability carrier.

■■ In conclusion, we are of the considered opinion that, in the case at bar, the allegations of the basic injury complaint are such as to fit precisely into the Professional Liability exclusion set forth in the defendant Aetna's Public Liability policy and to fit just as precisely into the Professional Liability coverage of the policy issued to the plaintiff architects by CNA, which is concurrently defending them in the basic Structural Work Act suit which precipitated the case at bar. In our view, that is where the duty to defend belongs and we leave it there.

The declaratory judgment in favor of the plaintiff is reversed and the cause remanded with directions to grant declaratory judgment to the defendant Aetna and against the plaintiff architects.

Reversed and remanded with directions.

BURKE, P. J., and GOLDBERG, J., concur.