BOBBER AUTO TRUCK PLAZA, Plaintiff-Appellee, v. THE DEPART-MENT OF REVENUE, Defendant-Appellant.

Fifth District   No. 5—85—0387

Opinion filed May 19, 1986.

JONES, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones-Stewart, Solicitor General, and Gabriel M. Rodriguez, Assistant Attorney General, both of Chicago, of counsel), for appellant.

Brainerd W. Latourette III and Kenneth V. Byrne, both of Schlueter, Byrne & Cavanagh, of Clayton, Missouri, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff taxpayer Bobber Auto Truck Plaza (Bobber) commenced this action by filing a complaint for administrative review from a decision of the Illinois Department of Revenue (Department) denying Bobber's claim for credit for overpayment of retailers' occupation tax and municipal retailers' occupation tax from 1978 through 1981. The circuit court of Effingham County reversed the decision of the Department, which appeals. We affirm.

The facts are as follows: Bobber is a full-service truck stop, which

includes a restaurant and motel, a store, and vehicle maintenance and fuel sales. It is located at the intersection of interstates 57 and 70 in Effingham. Bobber's present owners purchased it in November of 1978. The accounting firm of Clapper, Kitchenmaster & Co. of Mankato, Minnesota, had been the owners' accountant for about 20 years but had no prior experience calculating taxes with respect to motor fuel sales in Illinois. In April of 1981 Clapper, Kitchenmaster & Co. became aware that it had been paying retailers' occupation tax and municipal retailers' occupation tax on amounts which included Federal excise tax. Clapper, Kitchenmaster & Co. immediately corrected its method of tax calculation and applied to the Department for credit of $19,009.09 in retailers' occupation tax and $4,849.15 in municipal retailers' occupation tax overpaid by Bobber during the period in question.

The Department issued notice of its tentative determination denying Bobber's claim, stating Bobber had not definitely established the tax was paid in error or that the issuance of a credit memorandum would not result in unjust enrichment of Bobber. Bobber prevented the tentative determination from becoming final by requesting a hearing on its claim.

The accounting firm acted as Bobber's attorney at the hearing before the Department's referee. The two witnesses at the hearing were Keith Bishop, a revenue auditor for the Department, and Robert Kitchenmaster of Clapper, Kitchenmaster & Co. Mr. Bishop testified that during the entire period in question Bobber posted signs on its fuel pumps indicating that all applicable taxes were included in the pump price. According to Mr. Bishop, the Department permitted taxpayers to show the collection of taxes in two ways. The first was to charge for it as a separate item. The second, for those taxpayers such as motor fuel vendors who do not normally issue invoices for each transaction, was to post a sign stating that the pump price included retailers' occupation tax and municipal retailers' occupation tax. Mr. Bishop testified that customers were entitled to request that Bobber supply a statement showing actual price and tax; he had no knowledge that any had done so.

Mr. Kitchenmaster testified that the accounting firm did not recognize the tax calculation problem until 1981, when it immediately changed its calculation procedure. According to Mr. Kitchenmaster, the change in 1981 was solely one of accounting, and "there is absolutely no changes that occurred whatsoever in the operation in anything that was done."

The hearing officer concluded that Bobber "intended" to collect

the excess tax and had not refunded the excess amounts to its motor fuel customers, thus precluding a refund or credit of the claimed amounts by the Department.

The circuit court of Effingham County reversed in a written opinion in which the court took judicial notice ("in lieu of remanding the case pursuant to Ill. Rev. Stat., ch. 110, par. 3—111 for the purpose of taking additional evidence when from the state of the administrative record and upon the briefs and arguments herein such action would be just") that Bobber was one of several highly competitive fuel vendors located at the intersection of the two interstates, and that the price of fuel in that area changed daily based on the competition. The court concluded that since Bobber's prices were competitive with other fuel prices in that area, every penny of taxes paid in error reduced Bobber's profit margin compared to the other merchants, with the result that Bobber bore the economic burden of the excess tax. The circuit court ordered the allowance of Bobber's claim for credit with interest. The Department appeals.

■ No matter how valid the taxpayer's claim, taxes voluntarily paid cannot be recovered absent a statute authorizing credit or refund. (*Jones v. Department of Revenue* (1978), 60 Ill. App. 3d 886, 889, 377 N.E.2d 202, 204.) There was in force at pertinent times a statute which provides in part:

> "If it appears, after claim therefor filed with the Department, that an amount of tax or penalty or interest has been paid which was not due under this Act, whether as the result of a mistake of fact or an error of law, except as hereinafter provided, then the Department shall issue a credit memorandum or refund to the person who made the erroneous payment ***.
>
> * * *
>
> No credit may be allowed or refund made for any amount paid by or collected from any claimant unless it appears (a) that the claimant bore the burden of such amount and has not been relieved thereof nor reimbursed therefor and has not shifted such burden directly or indirectly through inclusion of such amount in the price of the tangible personal property sold by him or in any manner whatsoever; *** or (b) that he or his legal representative has repaid unconditionally such amount to his vendee ***." (Ill. Rev. Stat. 1983, ch. 120, par. 445.)

The Department argues that Bobber did not prove that it bore the burden of the excess tax so as to entitle Bobber to refund or credit per the above statute. As a preliminary matter, the Department contends the circuit court erred in considering matters not presented be-

fore the hearing referee or included in the record.

■■ ■ Section 3—110 of the Administrative Review Law states that no new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court, and that the findings and conclusions of the agency on questions of fact shall be held *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) This does not mean that the court may not take judicial notice of facts in administrative review cases. Judges are not presumed to be more ignorant than other people regarding matters of common knowledge. (*Theo. B. Robertson Products Co. v. Nudelman* (1945), 389 Ill. 281, 286, 59 N.E.2d 655, 657.) They ought to know at least what everyone else knows. (*Wheeler v. Aetna Casualty & Surety Co.* (1973), 11 Ill. App. 3d 841, 849, 298 N.E.2d 329, 338, *vacated as moot* (1974), 57 Ill. 2d 184, 311 N.E.2d 134.) Judicial notice may be taken of factual evidence where the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy. (*Vulcan Materials Co. v. Bee Construction Co.* (1983), 96 Ill. 2d 159, 166, 449 N.E.2d 812, 815.) The circuit judge sitting in this case in Effingham County doubtlessly had knowledge of the major intersection in question. We do not doubt that motor fuel pricing at that location is competitive. However, price differences between fuel vendors are not uncommon. We have no reason to believe that the judge could remember fuel prices of Bobber and other area vendors between 1978 and 1981 when this case was before the circuit court in 1984 and 1985, nor have we means to verify such facts. We believe those prices were not a proper subject of judicial notice in the case at bar. This conclusion does not require reversal, since the judgment may be sustained regardless of whether the specific reasons assigned are correct. *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 283, 111 N.E.2d 329, 334.

We believe the circuit court's alternative suggestion, remanding the case for the taking of evidence on the matter of fuel prices from 1978 through 1981, would have been more proper and more just than judicially noticing facts that should have been proved. Remand for that purpose is specifically authorized by section 3—111(7) of the Administrative Review Law. (Ill. Rev. Stat. 1983, ch. 110, par. 3—111(7).) This court could also remand for that purpose. (87 Ill. 2d R. 366(a)(5).) We do not view that procedure as necessary here.

■■ We view the evidence adduced as sufficient to require that the judgment be sustained. The crucial question under the refund or credit statute is whether the excess tax paid by Bobber was passed on to those who purchased fuel from Bobber between 1978 and 1981. Bobber

argues that it was not involved in point-of-sale computations of applicable taxes, and that "no specific amount of tax was determined until long after the sale of a gallon of fuel." We find the quoted proposition proved by uncontradicted evidence adduced before the Department's referee. According to Mr. Kitchenmaster, when the error was discovered, the sole change made was one of accounting; the error was discovered by the accounting firm, which changed its procedure "immediately"; nothing was changed in the operation of the business. Mr. Bishop testified that Bobber was authorized to transact fuel sales without computing and showing a separate amount collected for taxes. The Department admits that its regulation number 150.1310 was in force during the period in question and provided in pertinent part:

> "If the retailer who is entitled to use the posted sign procedure wishes to comply with the requirement in question *without raising his prices,* he may do this by publicly displaying a sign stating that all tangible personal property for which a given charge is made is being sold for a specified amount, with the Use Tax and local Retailer's Occupation Tax being a specified amount based on the applicable tax collection schedule ***, and with the total equaling the entire charge with [*sic*] the seller makes for such tangible personal property." (Emphasis added.)

Since none of this evidence was contradicted, the reasonable conclusion was that Bobber did not compute the amount of tax applicable to a given fuel sale until after its fuel customers had paid for their purchases.

We concur with Bobber that its proved method of doing business requires that Bobber be treated differently from an "add-on-tax" retailer under the refund or credit statute, and that the Department erred in concluding that Bobber "intended" to collect the erroneous tax. Under the method authorized by the Department and adopted by Bobber, the taxes which Bobber "intended" to collect equalled the amount it "intended" to pay, *i.e.,* the amount it was required to pay. The seller's "intent" in these circumstances was to maximize its profits by minimizing its tax and other liabilities. Imputing an "intent" to collect an excess tax is equivalent under these circumstances to imputing an intent to operate on higher costs than one's competitors. This will never be a realistic assumption, and we reject it.

On the instant record the Department should not have concluded that Bobber passed the excess tax onto its customers. We do not hold that no set of facts could ever arise in which the retailer could not pass on an erroneous tax to its customers under a system where the tax is not calculated at the time of sale. However, on the present record we

find no just reason to disturb the judgment of the circuit court.

For the foregoing reasons, the judgment of the circuit court of Effingham County is affirmed.

Affirmed.

HARRISON, J., concurs.

JUSTICE JONES, dissenting:

I respectfully dissent.

Plainly, the taxpayer in this case made a mistake in the manner it calculated the retailers' occupation tax and the municipal retailers' occupation tax. The mistake arose from a misinterpretation of the Illinois statutes or from a failure to make any investigation or inquiry regarding the Illinois statutes. In either event, there can be no question that the tax was collected from its customers, calculated, and paid by the taxpayer voluntarily. Under such circumstance the taxpayer is not entitled to a refund. See *W. F. Monroe Cigar Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 161, 162, 365 N.E.2d 574, 575, where the court related the applicable law of Illinois:

> "It is well-established law in Illinois that a taxpayer's right to a refund or credit can arise solely from statute, and that taxes voluntarily paid, and not under duress, cannot be recovered by the taxpayer in the absence of any statute providing for a credit or refund (*People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318; *Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App., 3d 90, 337 N.E.2d 305.) This is true even if the taxing statute itself is unconstitutional. (*S.A.S. Co. v. Kucharski* (1972), 53 Ill. 2d 139, 290 N.E.2d 224.) It is also clear that the only statute allowing recovery or credit for an overpayment of sales or use taxes only permits such recovery where the taxpayer himself has borne the burden of the tax, either originally or by reason of an unconditional repayment. (Ill. Rev. Stat. 1975, ch. 120, par. 445.) Thus, if the taxpayer making the claim has passed the tax on to the customer by adding it to the purchase price, he is not entitled to credit although the taxes were paid in error. *Chuck Thiel Auto Sales, Inc. v. Isaacs* (1962), 24 Ill. 2d 302, 181 N.E.2d 149."

I would reverse.