(No. 41743.—

DONALD J. BARAN, Appellee, *vs.* THE CITY OF CHICAGO HEIGHTS, Appellant.

*Opinion filed September 26, 1969.*

WARREN R. ROSS and JAMES EAST, both of Chicago, for appellant.

HAROLD A. LIEBENSON and IRVING B. MAYER, both of Chicago, for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

After a jury trial Donald J. Baran recovered a $40,000 judgment against the City of Chicago Heights for personal injuries. The judgment was affirmed in the appellate court (99 Ill. App. 2d 221) and the city has been granted leave to appeal. To reverse the judgment it is contended that as a matter of law the city was not guilty of any negligence,

that the plaintiff was negligent as a matter of law, and that certain jury instructions tendered by the city were improperly refused.

The plaintiff, 29 years of age, incurred the injuries on December 8, 1960, when he drove his car past the dead end of Ashland Avenue and crashed into a tree. It was shortly after midnight, and he was on his way to a restaurant after an evening of bowling. He was driving alone, at about 25 miles an hour, and had never been in the particular area before. Ashland Avenue is a preferential street running north and south. At the south end toward which the plaintiff was traveling, it terminates in a"T" intersection with Hickory Street, which extends in an east-west direction. A vacant lot extends from the southern edge of Hickory Street some 150 feet to a railroad embankment 12 to 15 feet high. The tree with which plaintiff collided was about 30 feet south of Hickory Street and 5 feet east of what would be the center line of Ashland Avenue extended.

At the third and fourth intersections to the north of the "dead end" four-way stop signs were in place, and at the sixth there were traffic signals. All the other intersections had stop signs for east-west traffic. At or near each intersection there was an incandescent street light suspended over the roadway upon an arm eight feet long affixed to a vertical pole twenty-five feet high. The lamp at Ashland and Hickory, the "dead end," was erected on the northeast corner.

On the night in question the weather was cold and cloudy, and the streets were dry. The plaintiff was southbound alone in his 1955 model Buick convertible, driving about 25 miles per hour with his city driving lights on. According to his testimony, as his car entered the intersection the light from his headlights "came in contact with the beam of the overhead light and it sort of blended or melted in one glare of light, and as I passed through this light my front wheels went off the road of Hickory Street." When this happened he swerved to the left, saw the tree ahead of

him and then unsuccessfully tried to avoid hitting it. There were no signs, barricades or reflectors to indicate that Ashland Avenue terminated at that point.

Both parties introduced testimony concerning the lighting at the scene. Plaintiff called as an expert an electrical engineer who testified that in his opinion the intersection was improperly illuminated, that the light pole was placed on the wrong corner. There was testimony on defendant's behalf by a police officer and a member of the city council, both of whom lived in the vicinity, and by a neighbor whose home adjoined the vacant lot. Each stated that the street light cast sufficient illumination to see the lot, the tree and the embankment from a considerable distance away. There was no evidence of fault in the work of installation or maintenance. The conflict in testimony relates only to the location or "plan" of the lighting.

The city insists that the court should have directed a verdict, that the plaintiff, in driving too fast to stop within the range of his vision, was negligent as a matter of law, and that the evidence adduced to show negligence on defendants' part did not present a question for the jury. It is argued that as a matter of law a city is under no obligation to erect signs, barricades or reflectors warning of dangerous conditions, nor is its judgment in placing a street light subject to review unless the court can say it is so dangerous its construction would be negligence as a matter of law.

We cannot accept the argument. The court has long recognized that where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones. (*Johnston* v. *City of East Moline,* 405 Ill. 460; *City of Chicago* v. *Powers,* 42 Ill. 169; *City of Freeport* v. *Isbell,* 83 Ill. 440.) In holding a city responsible for injuries thus caused the court is not reviewing the city's discretion in selecting a plan. It is not controlling or passing upon the city's estimate of public needs. Nor is it deciding

what the "best" kind of improvement may be. It is simply saying that when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do. Such is in no sense usurping a legislative power, as suggested by defendant. A municipal corporation, like an individual or a private corporation, is required to exercise its rights and powers with such precautions as shall not subject others to injury. The rule which protects it in the exercise of its governmental functions should not be construed to relieve from liability when the plan devised, if put in operation, leaves the city's streets in a dangerous condition for public use. (*City of Chicago* v. *Seben,* 165 Ill. 371.) After a careful review of the record in the case at bar we think that the evidence of negligence was sufficient to justify the circuit court in refusing to direct a verdict.

Nor did the court err in refusing to find the plaintiff guilty of contributory negligence as a matter of law. Conduct will be deemed contributory negligence as a matter of law only when all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary determination could ever stand. *Pedrick* v. *Peoria and Eastern Railroad Co.,* 37 Ill.2d 494.

The plaintiff had been traveling along a preferential street for some five miles, obeying all traffic signs. The weather was good, the streets were dry, and plaintiff's city driving lights were on, when the "through" street abruptly ended, without any warning sign, reflector or other device. There was testimony that plaintiff's speed at the time was well under the speed limit of 35 m.p.h. And there was testimony that the light standard was improperly located, causing the lights from his auto to "melt into" the glare of the street light. Under these circumstances, it cannot be said as a matter of law that plaintiff's conduct was negligence, and therefore the issue was properly submitted to the jury. In answer to a special interrogatory, the jury

specifically stated that plaintiff was not guilty of contributory negligence and from the evidence in this record we would not be warranted in disturbing that finding.

It is finally contended that error was committed in refusing four instructions tendered on behalf of defendant. They referred to lighting conditions as part of a general plan, and to warning devices or signs, and sought to inform the jury that the city could not be held liable unless it failed to use care in adopting the general plan of lighting, and that the city had no duty to construct warning devices or signs near the scene. It is unnecessary to set forth the instructions verbatim. After examining the given instructions we think that the jury was adequately instructed on both the plaintiff's and the defendant's theory of the case, and that each of the refused ones was either misleading, inaccurate or inapplicable. Instructions should be considered as a series, and after doing so in this case we can see no prejudicial error in the manner in which the jury was instructed. *Cf. Lau* v. *West Towns Bus Co.,* 16 Ill.2d 442, 452.

In our opinion both the circuit and the appellate courts were right in their decisions. The judgment will be affirmed.

*Judgment affirmed.*