DUDLEY PORTER, Adm'r of the Estate of Benjamin R. Porter, Deceased, *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF DECATUR, Defendant-Appellee.

(No. 11929;

Fourth District—February 14, 1974.

William R. Heiss, of Whitley, Suter & Heiss, of Decatur, for appellants.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Jerald E. Jackson and John E. Fick, of counsel), for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiffs appeal from the order of the trial court dismissing their amended complaint with prejudice and entering judgment upon the pleadings for defendant.

The plaintiffs in this action are Dudley Porter, as administrator of the the estate of his son, Benjamin R. Porter, and Dudley Porter, as an individual. Plaintiff, as administrator, seeks recovery for the wrongful death of his son. Plaintiff, as an individual, seeks to recover funeral expenses and an inquest fee pursuant to his liability under the Family Expense Act (Ill. Rev. Stat. 1969, ch. 68, par. 15); he also seeks damages for the loss of his truck which the decedent was driving at the time of the occurrence.

Plaintiffs allege a cause of action arising from the following facts: On April 4, 1970, at approximately 9:25 A.M., the decedent was driving a Chevrolet truck south upon North 22nd in Decatur, approaching U.S. Route No. 36. The intersection of the two thoroughfares was controlled by electric traffic signals and decedent entered the intersection upon a green light for south bound traffic. At the same time and place a convoy of Illinois National Guard trucks was proceeding west on U.S. Route No. 36 against the red traffic signal at the intersection. Such convoy was being escorted by officers of the Police Department upon an alleged arrangement that the convoy led by the police officers should disregard the signal lights controlling the traffic. Decedent's truck was struck by a unit of the National Guard convoy.

The amended complaint alleged that defendant was guilty of one or more of the following acts or omissions (which were alleged to be negligent in counts I through III, and alleged to be wilful and wanton in counts IV through VI), in that through its agents, servants, and/or employees it:

"(a) allowed the traffic signals at said intersection to operate on an alternating green, yellow, red sequence, knowing, or in the exercise of due care and caution should have known that the Illinois National Guard convey would proceed against the red light traffic signal.

(b) directed the Decatur Police Department to direct traffic at said intersection, but failed to have a police officer or other agent at said intersection directing traffic at the time said collision occurred.

(c) failed to maintain reasonable traffic precautions at said

intersection, warning Plaintiff's decedent of the presence of said Illinois National Guard convoy entering said intersection against operating traffic control signals."

The amended complaint also alleged violation of a statute:

"(d) Through its agents, servants, and/or employees, failed to provide traffic warning signals, signs, markings or other devices when said signals, signs, markings or other devices were necessary to warn of a condition which endangered the safe movement of traffic, in violation of Chapter 85, Section 3—104 of the Illinois Revised Statutes, 1969."

The complaint alleged that as a direct and proximate result of one or more of the specified acts or omissions of the city, the collision occurred and decedent sustained the injuries of which he died.

Defendant's motion to dismiss the original complaint stated that the complaint failed to state a cause of action against the defendant. The motion stated that the complaint failed to allege facts showing the defendant had a duty toward plaintiff, that defendant was negligent, or that defendant had any control over the operation of the vehicle with which decedent collided. The defendant's motion to dismiss the first amended complaint contained statements similar to those in the previous motion to dismiss, and stated for the first time that "the defendant is immune from liability for acts or omissions described in the First Amended Complaint".

The colloquy of the court at the conclusion of the hearing upon the motion to dismiss reflects a conclusion that the city had no duty to the decedent under the circumstances pleaded.

We find substantial authority to the contrary. The statutory duty of a city [1] is defined in Ill. Rev. Stat. 1969, ch. 85, par. 3—102(a):

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be

---

[1] See Baum, *Tort Liability of Local Governments and Their Employees*, 1966 U. Ill. L.F. 981, 1011:

"Almost all of the substantive sections of the Immunity Act assume that public entities and employees may be liable under common law principles and on that premise create immunities to negate such liability. Article III of the act which deals specifically with injuries arising from use of public property departs from this pattern, and begins with a section outlining the general duty of public entities to use ordinary care in maintaining their property for public use."

> liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such conditions."

Since it is substantially alleged that the city was operating through its agent under an arrangement to escort the convoy without regard to the operation of the established traffic signals, it is apparent that the city had actual notice of the conditions. The city is bound to take notice of the dangerous character of that which it causes to be done. *Village of Jefferson v. Chapman,* 127 Ill. 438.

Further considering the definition of the city's duty, it is noted that Ill. Rev. Stat. 1969, ch. 85, par. 3—104(a), provides that a local public entity or its employee is not liable for injury caused by the failure to *initially* provide regulatory traffic control devices, stop signs or other traffic regulating signs upon such streets. In the absence of such controls a person reasonably using the street would be obligated to drive according to the usual rules of the road provided by statute. However, subparagraph (b) provides:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices *unless* such a signal, sign, marking or device was *necessary* to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Emphasis supplied.)

Upon the allegations of the complaint that decedent entered into the intersection upon the invitation of the conventional green traffic signal, we conclude that it is an issue of fact whether it:

> "* * * was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of ordinary care."

The Illinois Supreme Court has determined that a municipal duty existed under comparable circumstances. In *Johnston v. City of East Moline,* 405 Ill. 460, 91 N.E.2d 401, one of four traffic signals was damaged and was removed by the city. Decedent relied upon his green signal, entered the intersection, and was struck by a car which entered the intersection upon the street which had no traffic signal. In affirming plaintiff's judgment for negligence, the court said:

> "Appellant having elected to install, and having installed the signal system in question, it was a corporate duty not to permit its

operation in a manner calculated to cause injury to others. In permitting the signal lights on the three corners of the intersection to operate while those at the northwest corner were completely out of service it failed to perform a corporate duty." 405 Ill. 460, 468.

After commenting that many jurisdictions had determined to the contrary, the court said:

"Justice and reason, however, impel us to the conclusion that after the signal system in question was constructed and in operation, the keeping of it in such condition that it would not inevitably be hazardous and invite citizens into danger was a corporate duty, for the failure of which liability was incurred." 405 Ill. 460, 468.

Again, in *Baran v. City of Chicago Heights*, 43 Ill.2d 177, 251 N.E.2d 227, decedent drove through a dead-end street and struck a tree. An issue raised concerned the adequacy of the street light placed at the intersection to disclose the hazardous condition. The city contended that it had no duty to erect signs or barriers to protect against the conditions and that there was no liability for the placing of the light unless such was negligent as a matter of law. In affirming the judgment for plaintiff, the court said that the court has long recognized that where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones. Noting that the court was not holding the city responsible through review of the city's discretion in selecting a plan:

"It is simply saying that when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do. Such is in no sense usurping a legislative power, as suggested by defendant. A municipal corporation, like an individual or a private corporation, is required to exercise its rights and powers with such precautions as shall not subject others to injury. The rule which protects it in the exercise of its governmental functions should not be construed to relieve from liability when the plan devised, if put in operation, leaves the city's streets in a dangerous condition for public use." 43 Ill.2d 177, 181.

In *Jones v. City of Rock Island*, 101 Ill.App.2d 174, 242 N.E.2d 302, plaintiff was injured when she slipped upon an unusual accumulation of ice occasioned by a defect in the walk and curb. The city contended that the judgment for plaintiff must be set aside by reason of the provisions of the "Local Governmental Employees Tort Immunity Act". The court noted that such Act for the most part codified the pre-existing law found

in the decision of the State, and that the city must use ordinary care to maintain its streets in a reasonably safe condition.

Upon the facts alleged, the condition created here is aptly characterized by the language found in *Franklin v. United States* (N.D. W.Vir. 1954), 124 F.Supp. 953. There, plaintiffs suffered injury when a military convoy passed through the city of Wheeling under police escort without responding to the traffic signals. The city was not a party to the law suit, but the hazard created was described in the language:

> "To allow the ordinary traffic lights to operate as usual without police attendance and thus invite the traveling public into the street crossings and, at the same time, permit Army or other vehicles to drive through the street crossings in violation of the stop signals of the red lights, is an invitation to collision and disaster. No one responsible for such a condition can be exonerated from responsibility. \* \* \* When Government officials, federal or municipal, assume control of an area or an operation, they are under a duty to meet the responsibility adequately. Highway travelers are justified in reposing confidence in officers of law and in traffic signals operated in accordance with law. Travelers should not be beguiled into positions of danger and disaster."

■■ The complaint alleges facts concerning the escorting of the convoy sufficient to charge conduct under circumstances exhibiting a reckless disregard for the safety of others. The facts alleged show either a failure to exercise ordinary care to prevent an apparent danger or a failure to discover danger through carelessness or recklessness when it could have been discovered by ordinary care. (*Hocking v. Rehnquist*, 44 Ill.2d 196, 254 N.E.2d 515.) Such are sufficient to allege wilful and wanton misconduct.

■■ The city contends that it is not liable for the acts of the driver of the convoyed truck in driving through a red light. Proximate cause exists if the injury is the natural and probable result of a negligent act or omission and is of such character that an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence. (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (*Johnston v. City of East Moline*, 405 Ill. 460, 91 N.E.2d 401.) Proximate cause is ordinarily a question of fact to be determined by a jury. (*Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74; *Czochara v. Howard Parlor Furniture Co.*, 117 Ill.App.2d 253, 254 N.E.2d 546.) Evidence tending to support the allegations in this complaint would raise a question of fact for the jury upon the issue of proximate cause.

The judgment is reversed and the cause is remanded with directions to vacate the judgment order entered for defendant and for further proceedings not inconsistent with the views as expressed herein.

Reversed and remanded.

CRAVEN, P. J., and SIMKINS, J., concur.