ASHLAND SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellee, Cross-Appellant, *v.* AETNA INSURANCE COMPANY, Defendant, Cross-Appellee —(INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.)

(No. 56473;

First District (2nd Division)—February 19, 1974.

Rabens, Formusa & Glassman, of Chicago (George C. Rabens and Marvin Glassman, of counsel), for plaintiff-appellee and cross-appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, and Peter J. Mone, of counsel), for defendant-appellant.

Clausen, Hirsh, Miller & Gorman, of Chicago (John P. Gorman, Stephen D. Marcus, William J. Sneckenberg, and James T. Ferrini, of counsel), for defendant, cross-appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an appeal from the decisions of the circuit court in a declaratory judgment action filed by plaintiff Ashland Savings & Loan Association (hereinafter Ashland) alleging breaches of contracts of insurance plaintiff had with defendant-cross-appellee Aetna Insurance Company (hereinafter Aetna) and defendant-appellant Insurance Company of North America (hereinafter INA). Briefly, the complaint alleged in pertinent part that INA insured Ashland against loss and damage by fire to a certain building and that Aetna insured Ashland, under another policy, against loss and damage resulting from the insured's failure to effectively provide insurance coverage for the building, and then prayed that the court determine which defendant was obligated to Ashland.

INA filed a motion for summary judgment asserting that its policy with Ashland had been terminated prior to the date of the alleged loss. Aetna also filed a motion for summary judgment alleging that the fire policy issued by INA for the coverage of loss to Ashland's building had been in force at the date of the alleged loss, and that, therefore, Aetna was not liable to pay under the terms of its policy with Ashland.

The court below entered orders granting Aetna's motion for summary judgment and denying INA's motion for summary judgment, finding, with respect to INA, that its policy with Ashland was in full force and effect on the date of the alleged loss, in that the policy had not been effectively cancelled in keeping with the provisions of 12 U.S.C.A. § 1749 bbb—3 (1969), a part of the National Insurance Development Program. Thereafter, the court below ordered that judgment be entered for Ashland against INA in the amount of $214,990.27. INA appeals from those decisions in the court below. In addition, Ashland brings a cross-appeal against Aetna, requesting that should this court find that INA's policy had been effectively cancelled prior to the date of the damage to Ashland's property, then the court should further find that Aetna is liable to Ashland under the terms of the errors and omissions form of the policy issued to Ashland.

While INA assigns a number of errors on appeal, we are of the opinion that the only issue necessary to decide is whether the trial court acted with propriety in entering the orders granting Aetna's motion for summary judgment and denying that of INA. Our finding on this issue will be dispositive of the appeal.

The facts pertinent to our decision are as follows. Ashland, a State of Illinois chartered savings and loan association with offices in Chicago, owned and operated an apartment building at 5054-58 No. Winthrop Avenue in Chicago. On October 21, 1966, Ashland and INA entered into a contract of insurance—which, among other things, provided Ashland protection against fire loss. The policy included the following pertinent provisions:

> "This Policy covers from October 21, 1966 to until cancelled noon, Standard Time, at Insured's Address.
>
> *   *   *
>
> If this policy is written under the Annual Payment of Premium Plan it shall not terminate until cancelled by the Insured or the Company. The premium hereunder shall be payable annually in advance. The first annual premium is set forth on Page 1 and becomes due and payable on the inception date of this policy. The premium for each successive annual period shall be computed to

reflect current conditions and become due and payable on the anniversary date.

\* \* \*

This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The INA policy, then, was renewable by the payment of yearly premiums, its anniversary date being October 21; the policy was renewed on the anniversary date in 1967 and 1968. On October 2, 1969, in accordance with the provisions of the policy, INA mailed to Ashland a notice of cancellation informing Ashland that its policy was to be cancelled effective October 21, 1969.

The cancellation notice sent to Ashland read in part:

"You are notified that we are herewith cancelling your policy indicated below, in accordance with its terms, and all liability thereunder will terminate, effective as stated below. \* \* \* Cancellation effective the 21st day of Oct. 1969 at the hour stated in the policy for the inception of the policy."

Subsequent to the notice of cancellation, no premium was tendered or paid by Ashland to INA.

Ashland, on February 1, 1967, entered into a special multi-peril policy with Aetna, which policy was for a three year term. The policy provided Ashland insurance in the amount of $200,000 with respect to any one mortgage under an "Errors and Omissions Form," the details of which are not pertinent to this decision.

Ashland's ownership of the subject building came about as the result of a foreclosure which it had initiated. On November 30, 1969, a fire occurred in Ashland's apartment building, resulting in damage to the building and its contents, as well as loss of rent. It was this damage which led to this litigation.

Sometime in 1970, Ashland filed a breach of contract action against Aetna in the United States District Court for the Northern District of Illinois, Eastern Division. As originally conceived in the Federal action, Ashland contended that Aetna was liable under its policy, which was in

effect on November 30, 1969. Subsequently, Ashland amended its complaint and joined INA as a party defendant. In the amended Federal action Aetna contended that INA's notice of cancellation mailed October 2, 1969 was ineffective and invalid since INA failed to comply with the provision of the insurance code of the State of Illinois which required that insurance companies after one year coverage must advise the insured their reasons for cancellation. This statutory provision which became effective September 22, 1969 is chapter 73, section 755.1b of the 1969 Illinois Revised Statutes. Aetna, contending that INA's policy was thus in effect on November 30, 1969, moved for a summary judgment, as did INA, which relied on its theory that the policy had expired. Ashland moved for a judgment on the pleadings asserting it was entitled to recovery from either Aetna or INA.

The Federal District Court [1] abstained from deciding if the said Illinois statute was applicable in order to avoid a premature decision on a Federal constitutional issue when the state courts might reduce or eliminate the problem, and in order to avoid unnecessary interference with a State's internal policy in an important area. Consequently, the Federal Court denied all pending motions for summary judgment or judgment on the pleadings and dismissed Ashland's action.

Thereupon, Ashland brought the action which is the subject of the instant appeal. Ashland, in its complaint for declaratory judgment in the circuit court against both Aetna and INA, asserted that INA claimed its cancellation was in accordance with the provisions of its policy; that Aetna will not honor its policy contending that INA's notice of cancellation was ineffective in that: (1) INA had failed to comply with the 30-day notice of cancellation requirement of section 755.1b of chapter 73; (2) the statutory requirement for cancellation of section 755.1a; and (3) a February 19, 1969, order of the Director of the State of Illinois Department of Insurance with respect to the timing of cancellation and notification of procedures for obtaining substitute insurance.

INA, in its answer, asserted that the foregoing provisions in the complaint were legal conclusions unfounded in fact or law, and denied the allegation as to the effect of the alleged February 19, 1969, order. INA further asserted that sections 755.1a and 1b did not affect the termination of the contract in question and, if they did, they would be unconstitutional. By way of an affirmative defense, INA relied upon its policy and the cancellation pursuant thereto.

Aetna filed an answer admitting that its policy was in full force and

---

[1] *Ashland Savings & Loan Association v. Aetna Insurance Company* (N.D. Ill. 1971), 322 F.Supp. 82.

effect, and an affirmative defense that it had no liability for the reasons ascribed to Aetna in Ashland's complaint. Aetna simultaneously filed a motion for summary judgment, and a legal memorandum with exhibits which included, *inter alia:* answers to interrogatories by INA in the Federal District Court action; copies of correspondence between INA and Ashland *re* notice of the subject fire; as well as a blank form entitled:

"ILLINOIS PROPERTY INSURANCE
PLACEMENT FACILITY
ARTICLE XVI

ACCEPTANCE OF ARTICLES OF AGREEMENT
BY MEMBERS"

which form provided in part:

* * *

"As respects risks eligible for the Program, the Insurer agrees that with respect to cancellation or non-renewal initiated by the Insurer to be effective after October 29, 1968, it will give the policyholder (except in cases of non-payment of premium or evidence of incendiarism), 15 days to avail himself of the Program, and the Insurer shall, in writing explain to the policyholder the procedures for making application under the Program.

Accepted and ratified this ————day of September, 1968.

INSURER

By————————————

AUTHORIZED SIGNATURE "

In its legal memorandum (signed in the name of the law firm and not under oath), Aetna characterizes the aforesaid exhibit as a copy of a directive from the State director of insurance dated February 19, 1969, and still in full force and effect, with which INA's cancellation of the Ashland policy was not in compliance. Therefore, Aetna urged that the "purported cancellation notice is a nullity and void *ab initio.*"

INA filed a motion for summary judgment, with affidavits, based on the cancellation provision of the policy, the written notice of cancellation and the assertion that, as of November 30, 1969, its policy had not been in effect.

Thereafter, Ashland filed a reply to the answers of both Aetna and INA and a paper entitled "Response of Plaintiff to Motion of Insurance

Company of North America For Summary Judgment." In Ashland's "response," there is raised, for the first time—either in the Federal action or in prior pleadings in this case—the suggestion that 12 U.S.C.A. § 1749 bbb—3 required INA to inform Ashland, in its notice of cancellation, of the procedures for obtaining an inspection under the Federal plan.

The trial court, after hearing extensive arguments of all counsel on the various motions, stated that the INA policy was not properly cancelled because it did not comply with the Federal statute. Thereupon, the trial court entered a summary judgment in favor of Aetna; denied the INA motion for summary judgment; held that INA's policy was in full force and effect on November 30, 1969, the date of the loss; and, after a further hearing, entered judgment against INA in the amount of $214,990.27, which included interest from the date of the loss, plus costs of the suit.

Although the record did not specifically indentify the Federal statute upon which the trial court based its conclusion, our review of the record indicates it must have been referring to the said section 1749 bbb—3. This statute, effective August 1, 1968 (Pub. L. 90—448, Title XI, §-1103, 82 stat. 558), is known as the "FAIR" plan and requires each insurer reinsured under the Federal statute to cooperate with the State insurance authority in establishing and carrying out statewide plans to assure fair access to insurance requirements.

The Federal schema for the "FAIR" plain was adopted in Illinois by virtue of the enactment, on July 30, 1968, of chapter 73, sections 1065.69—1065.78 of the 1969 Illinois Revised Statutes, and the creation, pursuant to the mandate of section 1065.72 of chapter 73, of the Illinois Property Insurance Placement Facility effective September 16, 1968. Those statutory sections read in pertinent part:

"§ 1065.69 Purpose

This article is to make basic property insurance available in urban areas and to public educational institutions through the establishment of an Industry Placement Facility for administering a FAIR Plan (Fair Access to Insurance Requirements), and a Joint Reinsurance Association for the equitable distribution and placement of risks among companies transacting property insurance business in the State of Illinois.

§ 1065.72 Industry placement program

Within 30 days after the effective date of this Article, * * * all insurers engaged in writing in this State, on a direct basis, basic property insurance or any component thereof in multi-peril policies, must establish an Industry Placement Facility to formu-

late and administer a Program for the equitable apportionment among such insurers of basic property insurance which may be afforded applicants in urban areas whose property is insurable in accordance with reasonable underwriting standards, but who, after diligent effort, are unable to procure such insurance through normal channels. *   *   *"

Subsequent to the enactment of these statutes, insurers conducting business in the State of Illinois were required to execute and file with the director of insurance of the State a document wherein they agreed to the requirements of the "FAIR" plan for the cancellation of policies.

As previously noted in this opinion, an unsigned, undated copy of a document allegedly issued by the State director of insurance was attached to Aetna's memorandum (filed in the trial court March 30, 1971) in support of its motion for summary judgment. On appeal, Aetna, as part of an appendix to its brief filed before this court, has included copies of certain documents which *do not form a part of the record on appeal.* Aetna requests, however, that the court take judicial notice of these documents in its consideration of the matters presented here for review. The documents are: (1) a copy of the document referred to above (see page 6), entitled "Article XVI," which purports to be a copy of the Article as accepted and ratified, on October 1, 1968, by INA as "Insurer," pursuant to the "Authorized Signature" of one "A. Richard Heilman"; and (2) a copy of a document which purports to be a certification by the director of insurance of the State of Illinois, dated January 8, 1973, that the instrument purportedly executed by "A. Richard Heilman" was on file and formed a part of the records of the Department of Insurance as of January 8, 1973.[2]

It is Aetna's contention on appeal that the document purportedly accepted and ratified by INA on October 1, 1968 was an agreement by INA to take steps designated to assist insureds (including Ashland) in the transfer of their business to the Illinois Property Insurance Inspection and Placement Program, and that because INA did not notify Ashland of the existence of the "FAIR" plan and of the procedure for procuring insurance thereunder in INA's October 2, 1969 notice of cancellation, said notice did not cancel Ashland's policy.

■■ The doctrine of judicial notice operates to admit into evidence, without formal proof, those facts which are matters of common and general knowledge and which are established and known within the limits of the jurisdiction of the court. (*Palmer v. Mitchell* (1st Dist. 1965), 57

---

[2] The record on appeal in this case was filed October 15, 1971, many months prior to the certificate of January 8, 1973.

Ill.App.2d 160, 167, 206 N.E.2d 776; 18 I.L.P., Evidence, §§ 1—9.) Section 48b of chapter 51 of the Illinois Revised Statutes (Ill. Rev. Stat. 1971, ch. 51, par. 48b) provides that courts of appellate jurisdiction shall take judicial notice of such matters as courts of original jurisdiction are required to take. (See *Town of Normal v. Witham* (4th Dist. 1968), 91 Ill.App.2d 262, 266, 233 N.E.2d 576.) The phrase "judicial notice," however, means no more than that a court will bring to its aid and consider —without proof of facts—its knowledge of those matters of public concern which are known by all well-informed persons. 31 C.J.S., Evidence § 6, *et seq.*

■■ With respect to the documents of which Aetna would have this court take judicial notice, we are of the opinion that they are not such matters of common and general knowledge, established and known within the jurisdiction of either this court or that of the court below, which would meet the requirements of the pertinent law of this State.

■■ INA, in its brief and in the oral argument before this court, objected to this court's taking judicial notice of such documents, pointing out that factual issues might be raised with respect to such documents and that the appellate court is not the forum in which to first present such evidence. We agree. This court will not take judicial notice of critical evidentiary material not presented in the court below, and this is especially true of evidence which may be significant in the proper determination of the issues between the parties. Judicial notice cannot be extended to permit the introduction of new factual evidence not presented to the trial court.

The entry of summary judgment in favor of Aetna, and the denial of same on behalf of INA, presents the question of whether the court below erred in holding, as a matter of law, that Ashland's insurance policy with INA had not been properly cancelled in keeping with the provisions of 12 U.S.C.A. § 1749 bbb—3 (1969).

■■ Courts of this State have often addressed themselves to the standards governing the entry of summary judgments pursuant to section 57 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57). We commented at length on these standards in *Lumbermens Mutual Casualty Co. v. Poths* (2d Dist. 1968), 104 Ill.App.2d 80, 243 N.E.2d 40:

> "The principles applicable to a motion for summary judgment under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1967, c. 110, par. 57) are well defined. Summary judgment is a procedure to be encouraged (Allen v. Meyer, 14 Ill.2d 284, 292, 152 N.E.2d 576 (1958)); however, it is a remedy to be awarded with some caution so as not to preempt the right to a trial by jury or the right

to fully present the factual basis for a case where a material dispute may exist. Ruby v. Wayman, 99 Ill.App.2d 146, 240 N.E.2d 699, 700 (1968); Solone v. Reck, 32 Ill.App.2d 308, 310, 311, 177 N.E.2d 879 (1961); Tezak v. Cooper, 24 Ill.App.2d 356, 362, 363, 164 N.E.2d 493 (1960).

Section 57 provides that a summary judgment should be rendered if the pleadings, depositions and admissions on file, together with the affidavits, if any, 'show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment or decree as a matter of law.'

Courts have construed this section to mean that in determining if there is a genuine issue as to any material fact, inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts then a triable issue exists. Ruby v. Wayman, supra, 700, 701; Peirce v. Conant, 47 Ill.App.2d 294, 300, 198 N.E.2d 555 (1964).

In making the above determination on a motion for summary judgment, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. Solone v. Reck, supra, 311. A summary judgment should then be granted where the moving party's right thereto is clear and free from doubt. Ruby v. Wayman, supra, 701; Palier v. Dreis & Krump Mfg. Co., 47 Ill.App.2d 334, 338, 198 N.E.2d 521 (1964); Solone v. Reck, supra, 310." *Lumbermens* at pages 87-88. See also 23 I.L.P., Judgments, §§ 71-77.

■■ In this case factual questions pertaining to the disputed articles of agreement were in fact in controversy before the trial court by virtue of the pleadings. The factual questions were apparently not considered important by the attorneys for Aetna or Ashland at the time of the hearing on the motion and certainly were not called to the court's attention. Now, as the result of the changing legal theories which have enmeshed this controversy, the significance of the disputed articles of agreement, the factual circumstances surrounding it, and the resultant legal effect of all such evidence require that this cause be remanded to the trial court. In this fashion, the parties can finally marshall all the evidence and crystalize their legal theories. Justice, for all the parties, will be better served with a proper record in the trial court. We find that there existed before the trial court triable issues of fact, as explained before, which, in our opinion, precluded the entry of summary judgment in Aetna's favor. So finding, we reverse all the judgments entered by the court below, and remand this case to the said court for proceedings not incon-

sistent with this opinion. In so doing we are in no way expressing any opinion with respect to the applicability of any of the legal theories presented by any of the parties.

The orders and judgments of the circuit court of Cook County heretofore entered in this matter are reversed, and all matters raised on this appeal are remanded as directed herein.

Reversed and remanded.

HAYES, P. J., and STAMOS, J., concur.