DEBORAH CURTIS, a Minor, by Donald Curtis, her Father and Next Friend, *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 81—1774

Opinion filed September 21, 1982.

DOWNING, J., concurring in part and dissenting in part.

Wildman, Harrold, Allen & Dixon, of Chicago (Kevin T. Martin and Kay L. Schichtel, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Myra J. Brown and Jeffrey M. Marks, Assistant State's Attorneys, of counsel), for appellee County of Cook.

Aries, Hoyt & Williams, of Chicago (Harvey J. Cohen, of counsel), for appellee Village of Westchester.

Dore & Clark, Ltd., and Ronald A. Parizek & Associates, Ltd., both of Chicago (Cornelius F. Dore, William G. Clark, Jr., and Ilene M. Davidson, of counsel), for appellee Village of Hillside.

JUSTICE HARTMAN delivered the opinion of the court:

On August 28, 1980, plaintiffs filed a second amended, six-count complaint (complaint), seeking damages from defendants, County of Cook (Cook County), village of Hillside (Hillside) and village of Westchester (Westchester) in each count. Hillside and Westchester moved to dismiss the complaint and Cook County moved for judgment on the pleadings, each pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45),[1] which the circuit court granted. Plaintiffs appeal, raising the principal issue of whether plaintiffs' complaint is legally sufficient.

Count I of the complaint is brought by Deborah Curtis, then age 16, through her father and next friend, Donald Curtis. That count alleges, *inter alia*, the following facts: On June 30, 1978, at 11 p.m., Theodore H. Spieker, then age 18, operated a motor vehicle westerly on 22d Street about one-half mile west of Wolf Road, accompanied by plaintiff Deborah Curtis, a passenger. Spieker drove his auto on the north shoulder of the four-lane highway, where it struck a traffic standard, causing injury to Curtis. Defendants Cook County, Hillside and Westchester had selected, placed, and maintained the sign with which the vehicle collided. Defendants were negligent in that they: failed to erect and maintain "break-away" poles at the aforesaid location; acquired, erected and placed a speed-limit sign of wood and steel, creating a dangerous condition to vehicles on the highway; and, erected the speed-limit sign near the highway, creating a dangerous condition to vehicles which might enter the shoulder of the road.

In count II, also brought by Deborah Curtis through Donald Curtis, plaintiffs further alleged that: The speed-limit sign was constantly and repeatedly used as a "quarter-mile" post by teenage and young adult drivers for the purpose of clocking vehicles moving in the quarter-mile distance at speeds which greatly exceeded the legal limit. Spieker was using the speed-limit sign for that purpose when he lost control of his vehicle, causing it to be operated on the shoulder of the road, where it struck the speed-limit sign. Defendants negligently: (a) failed to patrol the area of the accident for certain drivers who would use the speed-limit sign as a clocking quarter-mile post; (b) knew or should have known that the area and sign were so used, but failed to remove or replace the sign; (c) failed to install speed-control equipment; (d) placed and permitted the speed-limit sign to remain in its position, when they knew or should have known that it would be used to clock speeds of automobiles; (e) failed to patrol the area of the acci-

---

[1]Now section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615).

dent during specific times when the area was likely to be frequented by drivers using the sign to clock their speeds; and (f) permitted a dangerous condition to remain on the highway when they knew it was being used as a quarter-mile post by certain drivers.

Counts III and IV are causes of action on behalf of Deborah Curtis' father individually to recover medical and hospital expenses, incorporating by reference the allegations of counts I and II respectively. Counts V and VI allege independent causes of action on behalf of both Deborah Curtis' parents for the loss of the aid, society, comfort and companionship of their minor daughter.

## I

With respect to counts I and III of the complaint, plaintiffs argue that a jury should be allowed to decide whether the wooden post on which the speed limit sign was mounted should have been replaced with "break-away" or yielding metal posts, citing *O'Connell v. Chicago & North Western R.R. Co.* (1940), 305 Ill. App. 430, 27 N.E.2d 644, and *Stern v. International Ry.* (1917), 220 N.Y. 284, 115 N.E. 759. In both cases verdicts were upheld against defendants where plaintiffs were injured as the result of colliding with obstructions, a steel girder and electric power pole, respectively, each of which stood in the middle of the roadway. In neither case was the suitability of the material of which the obstruction, girder or pole was made at issue; rather, the conflicts involved the propriety of their placement.

More in point is *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368. There, plaintiffs sued the manufacturer of an exit signpost, claiming it should have been designed as a breakaway post, as in the instant case. With reference to a count sounding in strict liability, the supreme court stated:

> "[P]laintiffs have alleged no legally cognizable defect in the signpost. They have merely indicated a preference for 'breakaway' posts. However valid that preference might be, the availability of an alternative design does not translate into a legal duty in products liability. *** Here, there is no allegation of a defect in the post which affected its intended or actual use—to safely support the sign. The risks which inhered in the collision with the post were the same risks which attend all collisions between motorists and stationary objects which align the highway." (74 Ill. 2d 203, 212.)

Here also plaintiffs have alleged no legally cognizable defect in the signposts. The dismissal of counts I and III must therefore be affirmed.

## II

Considering next count II, it essentially alleges: defendants were negligent in failing to correct an unsafe condition on their roadway; the placement of the speed-limit post created a dangerous condition of which defendants had actual knowledge or should have known, in that drivers repeatedly used the sign post as a quarter-mile marker while clocking their speed ("speed clocking");[2] defendants should have alleviated the danger in moving the sign closer or farther from the intersection; and defendants should have patrolled the area at the specific times when they knew certain drivers were using the sign for clocking their speed.[3]

■ Local municipal entities have a duty to maintain their property in a reasonably safe condition (Ill. Rev. Stat. 1977, ch. 85, par. 3—102), which extends beyond their mere physical upkeep. When a municipality adopts a plan or design for improvements of public property, the Local Governmental and Governmental Employees Tort Immunity Act, after exculpating the governmental unit from liability generally provides (Ill. Rev. Stat. 1977, ch. 85, par. 3—103(a)):

> "The local public entity is liable, however, *if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.*" (Emphasis added.)

Here, according to the allegations of count II of the complaint, well-pleaded allegations of which, for the purposes of the motions, must be taken as true (*Johnson v. Franzen* (1979), 77 Ill. 2d 513, 522, 397 N.E.2d 825; *Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 111, 395 N.E.2d 549), defendants allegedly had actual notice of the fact that their placement of the speed-limit post permitted young people to continue to utilize the sign in their speed clocking activities, thereby creating and maintaining a dangerous condition.

Illinois courts have identified a duty owed by defendants in comparable circumstances. In *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 181, 251 N.E.2d 227, the city was held responsible for in-

---

[2]Counts II and IV of the complaint actually state that the sign which serves as a *quarter-mile marker* is located *one-half mile* west of Wolf Road; plaintiffs stated in oral argument that this seeming incongruity is an oversight which they seek to amend.

[3]The suggestion in the dissent that the complaint was deficient because it alleged conclusions rather than facts finds no counterpart in defendants' motions, which were required to specify such a deficiency so as to allow the parties the opportunity to amend. Ill. Rev. Stat. 1981, ch. 110, par. 2—615; *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912.

juries resulting from an accident caused by improper placement of streetlights. As here, no issue was raised regarding installation or maintenance of the lights; rather, the conflict arose over their location. The court stated, "when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do." (43 Ill. 2d 177, 181.) The foregoing *ratio decidendi* was again adopted by the supreme court in *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205, in a somewhat similar factual setting. In *Porter v. City of Decatur* (1974), 16 Ill. App. 3d 1031, 307 N.E.2d 440, the court upheld a complaint alleging the city was negligent in allowing an intersection traffic light to continue its ordinary sequence of signals notwithstanding its previous arrangement with the National Guard to allow the passing of one of its caravans without regard to the operation of the established signals.

Defendants argue *Baran, Greene* and *Porter* are inapposite since they involve accidents which were the result of ordinary and foreseeable use of the streets, whereas in the instant case the accident occurred because the driver lost control of his vehicle while "speed clocking." In support of their argument they rely upon *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62, *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 423 N.E.2d 519, *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 339 N.E.2d 779, and *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590. In *Boylan*, plaintiff's incompetent was a passenger in an automobile which collided with another in an intersection and which thereafter struck a wooden utility pole located off of but nearby the paved roadway. Plaintiff there claimed the city of Elmhurst was negligent in permitting the placement of the pole in such a dangerous position, among other allegations of negligence. The court upheld the dismissal of this charge since there was no foreseeability that travelers would deviate from the roadway and strike the utility pole, an understandable position, particularly in light of the secondary collision involved in *Boylan*. Here, plaintiffs allege defendants' actual knowledge of the continuous dangerous use being made of the speed-limit sign. It cannot be said here that loss of control and collision with an object was a reasonably unforeseeable consequence under the facts alleged, as a matter of law. In *Hoffman*, the plaintiff brought an action against Commonwealth Edison Co. when plaintiff's vehicle struck a utility pole maintained by Edison after it had gone out of control off the road. The court there also held no duty existed between the plaintiff and Edison, as such an accident was not reasonably foreseeable,

in that the plaintiff did not foreseeably deviate from the road in the ordinary course of travel. The court noted that no evidence of prior accidents was introduced which might have given defendant notice of a dangerous condition, in contrast to the instant case, wherein defendants were alleged to have actual knowledge of speed-clocking activities in the immediate vicinity of the instant accident involving the very sign at issue.

In *Harding* and *Deren* it was held that municipalities were not responsible for unorthodox use of their streets of which they had notice: in *Harding* plaintiff's decedent was killed by a vehicle which was drag-racing on park district property; in *Deren*, plaintiff was struck by an automobile while he was walking on the roadway. In neither case, however, was it alleged that the municipalities' adoption of a plan resulted in increased hazard to plaintiffs. In fact, in *Harding*, the park district took various measures to prevent drag-racing. In the instant case it is alleged that defendants' placement of the sign was conducive to speed clocking.

An analogous situation is found in *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, in which the supreme court found that a negligence complaint against a housing authority stated a cause of action where it alleged that plaintiff's injuries which resulted from an assault at 1:15 a.m. in the authority's housing project were proximately caused by the authority's negligence in increasing the risk of crime at that hour by terminating security-guard service at 1 a.m. The court found that in providing such service, the housing authority was obligated to use reasonable care not to create increased dangers, especially where it had notice thereof. (82 Ill. 2d 313, 317.) Here, too, defendants may be liable for a situation of their own creation and maintenance of which they are alleged to have had actual knowledge.

Defendants argue that Spieker's conduct was, as a matter of law, an intervening act superseding defendants' negligence, so that their negligence could not constitute the proximate cause of Curtis' injuries. An intervening act of a third party may supersede a defendant's negligence when that act is unforeseeable. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.) In *Neering*, plaintiff alleged she was assaulted by one of the vagrants which were allowed to loiter on defendant's property, a train station. Defendant there claimed it bore no responsibility for plaintiff's injuries, which were caused by the conduct of the vagrants. The supreme court held, however, that defendant could have reasonably anticipated the complained of act and upheld a verdict for plaintiff. Here, also, a jury

could find the actions of Spieker reasonably foreseeable by defendants under the circumstances alleged by plaintiff.

Defendants also cite *Briske v. Village of Burnham* (1942), 379 Ill. 193, 39 N.E.2d 976, and *Carr v. Shirland Township* (1978), 66 Ill. App. 3d 1033, 384 N.E.2d 449, for the rule that when a defendant's negligent acts or omissions do nothing more than create a condition under which an accident was possible, and that condition causes an accident by the independent conduct of a third party, the actions of that third party are considered to be the true proximate cause of the injury. The cases cited by defendants, however, are inapposite, since in contrast to the incident at bar, the intervening conduct in each of the cases cited was unique and unpredictable. Here, the continuing act of using the sign as a base for speed clocking is the precise knowledge with which defendants are charged.

█ Plaintiffs further allege in count II that defendants negligently failed to post patrols or install speed-control equipment in the area, and argue on review that defendants owed a duty to enforce the speed restriction laws on 22d and Wolf Road. While acknowledging the general rule that public entities are not liable for failure to enforce ordinances or prevent illegal conduct (see *Gillan v. Hanna* (1972), 6 Ill. App. 3d 18, 284 N.E.2d 448), they rely on the exception to the general rule that public entities are liable where they owe a special duty of care to the plaintiffs, as contrasted with the public at large. The circumstances at bar do not fall under the special duty exception, however. In order for a municipality to owe a special duty toward an individual as contrasted with the public at large, the following requirements must be met: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. (*Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104.) Here, even assuming plaintiffs could have met the first three requirements, they have made no allegations which would lead to a conclusion that Curtis' injuries occurred while she was under the direct control of the county. But *cf. Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147.

█ From the foregoing, the dismissal of those allegations in count II which asserted defendants' negligence in having failed to remove or change the location of the sign as a dangerous condition of

which they knew or should have known by reason of its continuing use as a quarter-mile marker must be reversed and remanded for trial. The dismissal of those allegations related to failure to enforce speed control laws was correct, however, and must be affirmed.

■ Count IV is an action by Donald Curtis, individually, as a parent of Deborah Curtis, which seeks compensation for medical and hospital expenses he has and will incur as a result of defendants' alleged negligence set forth in count II, which he incorporates by reference. A parent may maintain such an action in Illinois. (See *Graul v. Adrian* (1965), 32 Ill. 2d 345, 205 N.E.2d 444; *Kennedy v. Kiss* (1980), 89 Ill. App. 3d 890, 412 N.E.2d 624.) Since the allegations of negligence in count IV track those set forth in count II, our ruling is the same relative to each theory articulated in count IV.

### III

With regard to counts V and VI of the complaint, plaintiffs argue that Deborah Curtis' parents should be allowed to recover damages for the loss of her society and companionship during her minority, contrary to the common law rule that they may only recover for the loss of Deborah's services or wage earning capacity during the remainder of her minority. Plaintiffs maintain that the common law rule reflects the archaic view that children are merely economic assets, and should be changed by this court to recognize the modern view of children as a source of companionship. They cite *Shockley v. Prier* (1975), 66 Wis. 2d 394, 225 N.W.2d 495, which upheld such a cause of action. Plaintiffs also cite *Stephens v. Weigel* (1948), 336 Ill. App. 36, 82 N.E.2d 697, in which the court held that the father and husband of the injured daughter and wife was entitled to assert a claim for consequential damages arising from his payment of their medical and hospital expenses, and for the loss of their services and society. The issue of the parent's cause of action for loss of his child's society and companionship was not addressed in the *Stephens* decision. Other jurisdictions overwhelmingly support the view that parents may not recover for the loss of a minor child's society and companionship. (See Annot, 69 A.L.R.3d 553, 555 (1976).) We are in agreement with those determinations.

■ In *Koskela v. Martin* (1980), 91 Ill. App. 3d 568, 414 N.E.2d 1148, a child was precluded from recovering for loss of services, companionship, society, and affection of her injured father. The court there acknowledged that Illinois is moving toward protecting family interests and is recognizing new causes of action toward that end; however, the action contended for there would be best provided by

the legislature, as with actions for wrongful death and alienation of affection. The intangible nature of the loss is not readily quantifiable in damages; the allowance of the cause could result in overlap recovery, increased litigation and multiple claims. The reasoning of *Koskela* is equally applicable to the converse question presented at bar of whether a parent may recover for the loss of companionship of the minor child. We are persuaded that the *Koskela* reasoning is equally applicable here and affirm the dismissal of counts V and VI.

## IV

■ In addition to the other arguments raised, Westchester contends that the section of 22d Street relevant to plaintiffs' cause of action is outside the geographical boundaries of Westchester. Westchester advanced this contention below, supported with an affidavit of the village manager, in response to plaintiffs' first amended complaint, to which plaintiffs apparently did not respond. Plaintiffs' failure to file counteraffidavits on this issue is construed by defendants as an admission on their part. Plaintiffs, however, thereafter filed their second amended complaint, which took the place of their previous pleading. (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101.) Westchester failed to renew this issue or attach its affidavit in its response to this complaint. Furthermore, Westchester's motion to dismiss the second amended complaint was brought pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45).[4] Although affidavits may be considered under a section 48 motion to dismiss (Ill. Rev. Stat. 1979, ch. 110, par. 48),[5] they may not be considered under a section 45 motion to dismiss for failure to state a cause of action, which admits all well-pleaded facts and attacks facially only the complaint's legal sufficiency. *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 131, 359 N.E.2d 171.

A reviewing court is empowered to take judicial notice of the territorial boundaries of municipalities (Ill. Rev. Stat. 1981, ch. 24, pars. 2—1—1, 7—6—8; ch. 110A, par. 366). Those boundaries are subject to change, of course, by way of annexation, union and disconnection (Ill. Rev. Stat. 1981, ch. 24, pars. 7—1—1 through 7—3—6), particularly with burgeoning population growth in suburban areas. Municipalities

---

[4]Now section 2—615 of the Code of Civil Procedure. Ill. Rev. Stat. 1981, ch. 110, par. 2—615.

[5]Now section 2—619 of the Code of Civil Procedure. Ill. Rev. Stat. 1981, ch. 110, par. 2—619.

are also authorized to extend territorial jurisdiction beyond corporate limits (Ill. Rev. Stat. 1981, ch. 24, pars. 7—4—1 through 7—4—3) and may have done so here. Reviewing court readings of maps which may or may not be up to date, under these circumstances, could result in an exercise in uncertainty, become hazardous to the parties' actions, and is better proved at the trial court level.

■ For these reasons, and because Westchester's objection was made as to the second amended complaint for the first time on appeal, the merits of Westchester's argument cannot be considered. See *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 556, 309 N.E.2d 550; *Village of Hillside v. Chicago, Aurora & Elgin R.R.* (1976), 40 Ill. App. 3d 861, 864-65, 353 N.E.2d 227.

We therefore affirm in part, reverse in part and remand for trial.

PERLIN, J., concurs.

JUSTICE DOWNING, concurring in part and dissenting in part:

I would affirm the dismissal of the defendant villages Hillside and Westchester for the following reasons:

I

The court should take judicial notice of the location, one-half mile west of Wolf Road on the north side of 22d Street, and whether it is located within either defendant village. It seems questionable whether two villages and the County of Cook would have joint jurisdiction. As the majority note (point IV), the village of Westchester raised this issue in the trial court and before this court. The village of Hillside did not raise the issue.

This court can take judicial notice of the territorial boundaries of municipalities. (See Ill. Rev. Stat. 1981, ch. 24, pars. 2—1—1 and 7—6—8; Hunter, Trial Handbook for Illinois Lawyers secs. 46:12, 46:13 (4th ed. 1972); *Sublette Exchange Bank v. Fitzgerald* (1912), 168 Ill. App. 240; *Bruson v. Clark* (1894), 151 Ill. 495, 497, 38 N.E. 252.) We can also take judicial notice of a matter which the circuit court failed to so do. Ill. Rev. Stat. 1981, ch. 51, par. 48g; *Wheeler v. Aetna Casualty & Surety Co.* (1973), 11 Ill. App. 3d 841, 852, 298 N.E.2d 329; *Ashland Savings & Loan Association v. Aetna Insurance Co.* (1974), 18 Ill. App. 3d 70, 77-78, 309 N.E.2d 293.

According to the records of the County of Cook, the specific location alleged in the complaint is not located within either defendant village. If this is the fact, then I think the court should take judicial no-

tice. It is recognized that the defendant villages failed to provide an adequate record on this point. However, in the interest of judicial economy, I would affirm the dismissal on this ground, subject to the right of the plaintiff to submit, during the time for petition for rehearing, any verified evidence to the contrary. I also realize that the more traditional procedure would be to remand the matter to the circuit court for a hearing. But this is really a simple issue which could be more efficiently handled in this fashion.

## II

The complaint does not allege a reasonably foreseeable legal duty on the part of the defendant villages. In *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, a minor thrown some 30 feet from an automobile following a collision had his leg impaled upon a drain pipe protruding from the ground on a parkway maintained by the defendant village of LaGrange. In concluding that the complaint did not allege a legal duty as to the village, the supreme court said:

> "[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable \*\*\*; it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. \*\*\* Prosser (Handbook of the Law of Torts (4th ed. 1971), sec. 31, at 146) comments: 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight." 56 Ill. 2d 372, 375-76, 308 N.E.2d 617, 619.

As said in *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 908, 398 N.E.2d 1007, "[a] municipality is not expected to anticipate unusual or extraordinary happenings." I think the conclusive nature of the allegations in the complaint present such an "unusual or extraordinary happening."

I realize there is always a clash between the desire of allowing a plaintiff a day in court and the duty of a plaintiff to file a legally cognizable complaint. In my opinion, this complaint is deficient in that it alleges conclusions rather than facts. Assuming the location to be within a defendant village, I do not find a legal duty on either village. Consequently, I would resolve the clash in favor of defendants and affirm the circuit court.

412

## III

I concur as to the affirmance of counts I, III, V and VI and dissent as to counts II and IV.